Hopewell Township Board of Supervisors and Hopewell Township Zoning Hearing Board, Appellants *v.* Edward B. Golla and Elizabeth M. Golla, his wife et al., Appellees.

Argued September 10, 1980 and reargued December 10, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., MENCER, ROGERS, BLATT, CRAIG, MACPHAIL, WILLIAMS, JR. and PALLADINO.

*Gilbert G. Malone, Ports, Beers, Feldmann & Malone,* for appellant, Hopewell Township Board of Supervisors.

*John W. Thompson,* with him *William Poole, Shoemaker and Thompson,* for appellant, Hopewell Township Zoning Hearing Board.

*Edward B. Golla,* for appellees.

OPINION BY JUDGE CRAIG, April 21, 1981:

Hopewell Township, in York County, has appealed from the Court of Common Pleas of York County, which held certain agricultural zone provisions of the Hopewell Township Zoning Ordinance (Ordinance) to be unconstitutional....

In 1968, Edward B. Golla and Elizabeth M. Golla, husband and wife, purchased a 140-acre farm in Hopewell Township. On December 29, 1976, they conveyed a ten percent interest in their farm, "undivided but divisible on demand", to each of their three sons, with the understanding that the land would be permanently partitioned when a survey of the land was completed. They proposed to effect further conveyances of tracts of land of approximately ten acres or more to their sons and contemplated partitioning the 140-acre tract into seven, and possibly as many as fourteen parcels, each of which would contain ten or more acres.

However the township has stipulated that if the landowners attempted the contemplated partition, it would prosecute them under Section 203.2[1] of the Ordinance, limiting the residential subdivision of *any* tract in an agricultural zone to a "minor residential land development" of not more than five residential lots, together with Section 203.9[2] of that Ordinance,

---

[1] Section 203.2 reads, in pertinent part:

§203.2 *Uses Permitted*: No building or structure may . be erected or used and no land may be used or occupied except for the following principal uses:

1. One-family dwelling on an approved lot in a minor residential land development or on an individual lot the dimensions of which have not changed since June 5, 1974.

"Minor residential land development" is defined in Section 102.2 of the Ordinance as "a residential land development consisting of five or fewer existing or proposed dwelling units."

[2] Section 203.9 reads:

§203.9 *Regulations Involving Lots in a Minor Residential Land Development*:

a) Lots to be separated from the original tract shall not contain more than one and one-half (1 1/2) acres for each dwelling unit assigned to the tract being separated unless it is determined that the lot is not suitable for agricultural use.

b) Lots shall be considered unsuitable for agricultural use if:

limiting the size of each such residential lot to not more than 1 1/2 acres, unless not suitable for agriculture.

After the Hopewell Township Zoning Hearing Board (board) upheld the validity of those sections, the trial court found them to be invalid, by a three-to-two decision.

Judge BLAKEY, in his majority opinion, correctly introduced the issue by stating:

> This case presents a classic confrontation between a basic property right of land owners, to convey their property to their children or others as they see fit, and a restriction of that right in what is declared to be in the public interest. . . .

1) The lot is on land in soil capability Units IV e-5 through VII s-2 as classified by the Soil Survey of York County, Pennsylvania, Series 1959, No. 23 issued May, 1963; or

2) The lot is on lands which cannot feasibly be farmed;

a) Due to the existing features of the site such as rock outcroppings, rock too close to the surface to permit plowing, swamps, the fact that the area is heavily wooded, or the fact that the slope of the area exceeds fifteen (15%) percent; or

b) Due to the fact that the size or shape of the area suitable for farming is insufficient to permit efficient use of farm machinery.

c) The applicant shall have the burden of proving that the land which he seeks to subdivide into lots larger than one and one-half (1 1/2) acres meets the criteria set forth in subsection 'b' hereof.

d) A property owner submitting a subdivision plan for a minor residential development will be required to specify on his plan which lot or lots carry with them the right to erect or place any unused quota of dwelling units his tract may have.

e) Nothing contained in this section shall be interpreted to prevent a bona fide 'farm' from adding adjacent ground to that farm.

Ever since Village of Euclid v. Ambler Realty Co.,.272 U.S. 365 (1926), it is clear that a restriction of private property rights by a zoning ordinance is proper when (a) the ordinance has a purpose that promotes the public health, safety or general welfare and (b) the means used to achieve that goal of the ordinance are substantially related to the end sought.

One challenging a zoning ordinance must bear the heavy burden of proving clearly and unmistakenly the unconstitutionality of the ordinance. Bilbar Construction Company v. Easttown Township Board of Adjustment, 393 Pa. 62, [141 A.2d 851] (1958); Benham v. Board of Supervisors of Middletown Township, 22 Pa. Commonwealth Ct. 245, [349 A.2d 484] (1975). To put it another way, a particular provision of a zoning ordinance must be clearly arbitrary and unreasonable and without substantial relation to public health, safety, or general welfare, before it can be declared unconstitutional.

We agree with the trial court and the board that the preservation of prime agricultural land is a sound, lawful and constitutional purpose of zoning regulations.[3] However, the method chosen here, actually a regulation of the subdivision of land, runs afoul of

---

[3] Enacted after the Ordinance in question here, Section 604(3) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, added by Section 1 of the Act of November 26, 1978, P.L. 1209, 53 P.S. §10604(3) now provides that the provisions of zoning ordinances may be designed "[t]o preserve prime agriculture and farmland considering topography, soil type and classification, and present use." We view the general zoning purposes of Section 604(1) and (2) of the MPC, 53 P.S. §10604(1), (2) as having theretofore provided like authority with respect to the preservation of agricultural land.

current statutory and constitutional law. We agree with the trial court's conclusions as to the subdivision limitations here because

—this regulation of subdivision flatly violates the enabling act; and

—allowing only five residential lots per tract, without regard to the size of tracts, produces irrational results unrelated to lawful land use control purposes.

1. Violation of Subdivision Enabling Statute

The basic statutory power of Pennsylvania municipalities to regulate the subdivision of land is limited by these words:

Provided, however, That the division of land for agricultural purposes into parcels of more than ten acres, not involving any new street or easement of access, shall be exempted.

That provision, within the definition of "Subdivision" in Section 107(21) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10107(21), is a clear legislative exemption allowing what the landowners here call "farmettes," as small as just over ten acres each.

The landowners, in their formal statement to the zoning hearing board and their notice of appeal, definitely proposed agricultural purposes for their ten-acre tracts, as required by *Suburban Group, Inc. v. Gittings*, 22 Pa. Commonwealth Ct. 295, 348 A.2d 490 (1975).

Moreover, a conflict between the Ordinance and the statute is manifested by the Ordinance provision which allows a residential lot (larger than 1 1/2 acres) only if *not* suitable for agriculture, while the statutory exemption applies only where the division is created *for* agricultural purposes.

Here, although the questioned regulation is contained in an ordinance captioned as a zoning ordi-

nance, the label of the ordinance cannot affect the case because this ordinance is clearly one which seeks to control the subdivision of tracts into lots, precisely the definition of subdivision which is embodied in the MPC section cited above. Note also subsections (c) and (d) of §203.9 of the Ordinance, quoted in footnote 2, which expressly apply to subdivision action as such.

Until the legislature amends the statutory expression of the public will, neither any municipal board nor this court, however laudable the aim, has any warrant to revise the legislative allowance of lot divisions of ten-acres-plus for agricultural purposes. Although earnest innovations in land use control approaches are commendable, this approach is ultra vires at present.

2. Irrational Results in Application

As stated above, we cannot disagree with the finding of the township board that the agricultural usage of land in the township is worthy of preservation.

However, one difficulty with Ordinance is highlighted by the board's twenty-third finding:

> (23) Productivity of farms and efficiency of farming operations would be decreased by the division of productive farms into ten (10), twenty (20) or less than fifty (50) acre tracts and in addition, interfere with conservation practices.

Thus the board found that an agricultural parcel division of fifty acres or more would not violate the preservation policy. In addition to conflicting with the legislature's policy, as noted above, this finding casts much doubt upon the reasonableness of the Ordinance, which, in essence, provides that the minimum farm size in Hopewell Township shall be determined in relation to whatever size the particular agricultural tract happened to have when the agricultural zoning was adopted.

A land use control which results in arbitrarily different conclusions, when applied to various properties, is invalid. *White's Appeal,* 287 Pa. 259, 134 A. 409 (1926), which condemned the determination of setbacks according to the happenstance of existing setbacks nearby, retains its vitality as a precedent here.

Here a limitation of not more than five residential lots for *any* tract, without reference to the size of tract, obviously produces residential density results and minimum lot areas which vary greatly with each tract. As applied to the 140-acre tract of landowners here, the maximum density, by arithmetic, is twenty-eight acres per family[4] and, after deduction of an allowable minor residential land development of $7\frac{1}{2}$ acres, the end result is a minimum agricultural lot size of $132\frac{1}{2}$ acres. In contrast, as applied to a 50-acre tract, for example, the density switches to one family per ten acres[5] and, with a minor residential land development deducted, the minimum agricultural lot size there would become $42\frac{1}{2}$ acres (notably, less than the fifty acres considered by the board to be a desirable agricultural minimum).

Because such variant results lack rational relationship to the purpose of preserving prime agricultural land and constitute disparate burdens upon different landowners, depending upon the happenstance of the respective tract's configuration when the zoning was adopted, we must conclude that the Ordinance is invalid and unconstitutional with respect to the regulation of subdivision effected by the "minor resi-

---

[4] This results from dividing 140 acres by 5 dwelling units. If the ordinance is read as allowing a sixth dwelling, on the agricultural parcel, the density would be 23.3 acres per family.

[5] If, as suggested by note 4, *supra,* the ordinance allows six dwellings per original parcel (5 in a minor residential subdivision and one on a residual agricultural lot), this density would be 8.3 acres per family. In either case, arbitrary densities result.

dential land development'' provisions constituting all of Section 203.9 and part of subsection 203.2(1).

The trial court order, which holds subsection 203.-2(1) void without qualification, if taken literally, would delete one-family dwellings entirely from the permitted uses of the agricultural zone, even as to farms, because the separate permitted use listing in subsection (5), ''Farm buildings and all agricultural uses,'' speaks to agricultural buildings only, leaving subsection (1) as the basic authorization for dwellings, whether on farms or lots. Accepting the township's view that the ordinance provisions should be viewed as severable,[6] our affirmance will modify the order below to make clear that the law condemns only the subdivision restrictions, not the allowance of one-family dwellings.

### 3. Legislative Restrictions on Judicial Relief

The township here has also contended that no invalidation of ordinance provisions by the trial court should be upheld because that court has not made the specific determinations required by Section 1011(1)

---

[6] The township, stopping short of logical acceptance of its own view as to severability, contends that, in invalidating the subdivision restrictions contrary to this case, we must also invalidate Ordinance subsection 203.2(1) as it permits one-family dwellings in the agricultural zone. Because the authorization of one-family dwellings has not been attacked and therefore has not been shown to be unlawful for any reason, the subdivision must be deemed severable to that extent; otherwise, as indicated in the text, and because there is no authorization for any other kind of dwelling, total invalidation of subsection 203.2(1) would result in an agricultural zone which, aside from pre-existing dwellings, would be an uninhabited district.

The township's contention, contrary to the principles of severability, would not save the agricultural zone but would subject it to a new illegality, a freeze against any future habitation within it. We cannot help but note that the township's contention thus would serve chiefly to block the landowner's proposal in this case.

of the MPC, 53 P.S. §11011(1), the pertinent part of which provides:

Section 1011.  Judicial Relief.—

(1)  In a zoning appeal the court shall have power to declare any ordinance or map invalid and set aside or modify any action, decision or order of the governing body, agency or officer of the municipality brought up on appeal, only if it determines that:

(a)  the municipality has not acted in good faith or made a bona fide attempt in the adoption of its ordinances or maps, or any amendments thereto, to meet the statutory and constitutional requirements for nonexclusionary zoning; or

(b)  the ordinance imposes limitations that are not reasonably related to the municipality's authority to determine its physical growth pattern, protect the Commonwealth's public natural resources, coordinate development with the provision of public services, or protect the character of the community.

Upon reargument, we requested that counsel direct their attention to the validity of that subsection, our concern centering upon its status with reference to the constitutional separation between legislative and judicial power.

Clause (a) of the subsection is apparently applicable where an ordinance has fallen short of meeting the law's requirement that zoning be nonexclusionary; taken together with the leading clause (1), it flatly provides that a court has power to declare such a zoning ordinance provision invalid *only* if a municipality's action or attempt has not been in good faith. If we take this clause (a), standing alone as it is, literally to mean that exclusionary zoning achieved in

innocence is nevertheless constitutional, the legal infirmity of the clause is obvious.

Therefore we move on to consider the disjunctively-related clause (b), which (also read with the leading clause) purports to permit judicial invalidation of a zoning ordinance provision *only* if there is a determination that the restrictions are not·"reasonably related" to the municipality's authority as to (1) physical growth pattern determination, (2) public natural resources protection, (3) development and public services coordination, or (4) community character protection. Of course, it is possible that zoning which is exclusionary or discriminatory or violative of substantive due process may, by reason of such an infirmity, be also condemnable as an unreasonable means of determining growth, coordinating development or protecting resources or community character.

On the other hand, this statutory description of the scope of judicial review, by its very terms, circumscribes the courts more narrowly than the fundamental rule that the courts must overturn zoning provisions which are not reasonably related to the promotion and protection of the public health, safety, morals or general welfare, or which otherwise violate constitutional provisions or enabling act limitations. *Gladwyne Colony, Inc. v. Lower Merion Township,* 409 Pa. 441, 446-47, 187 A.2d 549, 551-52 (1963); *Gratton v. Conte,* 364 Pa. 578, 584, 73 A.2d 381, 385 (1950); *Kerr's Appeal,* 294 Pa. 246, 144 A. 81 (1928); *Ward's Appeal,* 289 Pa. 458, 137 A. 630 (1927).

Even more significantly, the purportedly exclusive grounds for invalidation of zoning allowed the courts by subsection 1011(1) fall short of covering other considerations essential to the validity of zoning ordinance provisions per se. We may well conclude that the subsection's express concern with the declaration of invalidity of an ordinance or map means that it

does not seek to reach the "validity variance" function, where the challenge is not to the ordinance provision itself, but only to its confiscatory effect when applied to a particular property. *See Ferry v. Kownacki,* 396 Pa. 293, 152 A.2d 456 (1959). However, as to judicial review of zoning ordinance provisions as such, clause (b) of the subsection would inhibit judicial duty as to a number of validity grounds. If we examine just one of the categories of general validity claims usefully developed in R. Ryan, *Pennsylvania Zoning Law and Practice,* Ch. 3, we see that the subsection would fence the courts away from "planning methods" issues, as where the questioned provision was enacted by an unauthorized process, *Kline v. Harrisburg,* 362 Pa. 438, 68 A.2d 182 (1949), or without the adoption of a formal statement of community objectives, *see* MPC §606, 53 P.S. §10606, or where a land use control function has been granted to the wrong local agency, *Eves v. Zoning Board of Adjustment,* 401 Pa. 211, 220-21, 164 A.2d 7, 12 (1960), or where a specific classification is automatically applied to land newly annexed to the municipality, *Cameron v. Greensburg,* 3 Pa. Commonwealth Ct. 209, 281 A.2d 271 (1971); in all of such cases, the substantive content of the requirement could be "reasonably" related to the municipality's authority to determine, coordinate and protect its development, but the ordinance provisions, however reasonable, would not represent a lawful exercise of that authority.

In summary, clause (b), if broadly interpreted, may allow the courts to deal with substantive due process issues (including exclusion, *see Surrick v. Zoning Hearing Board of Upper Providence Township,* 476 Pa. 182, 382 A.2d 105 (1977)), with substantive power to zone ("authority" to determine growth, etc.), and even with discriminatory regulations such as spot zoning (if we assume that spot or discriminatory zon-

ing can never be "reasonably related"), but *only* if the court can make at least one of the determinations specified by the legislature in terms different from—if not narrower than—the terms of judicial constitutional doctrine.

Although subsection 1011(1), with its clause (b), perhaps cannot be faulted for what it purports to allow courts to do in the way of judicial review of municipal legislation, the key word "only" would limit courts to no more than that. Clearly, the legislature cannot inhibit judicial review of legislation, recognized as an unassailable judicial duty and power since *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803). In *Leahey v. Farrell*, 362 Pa. 52, 56, 66 A.2d 577, 579 (1949) the Pennsylvania Supreme Court reiterated:

> 'No less clear is it, under the constitutional distribution of governmental powers, that *the legislature cannot dictate to the courts how they shall decide matters coming before them judicially.*' (Emphasis supplied by the Supreme Court in Leahey, supra.)

Therefore, we conclude that subsection 1011(1), as to the portion here under consideration, is an unconstitutional transgression of the separation of powers.

We note that subsection (2) of Section 1011 of the MPC follows subsection (1) by providing that a court, after invalidating an ordinance provision, in granting relief with or without qualification, "shall consider" various other planning factors;[7] however, the town-

---

[7] Subsection (2), 53 P.S. §11011(2), in summary, requires that, in fashioning relief, a court must consider suitability of the site in relation to community facilities and any comprehensive plan which may exist, impact on regional housing and transportation, suitability of site in relation to its natural features, any impact of the use upon the site's natural features, and the impact of the proposal on the preservation of agriculture and other essential land uses.

ship here has explicitly declined to urge consideration of that subsection, contending instead that it is not applicable to this case in view of the severability of the ordinance provisions involved. Accordingly, we will not deal with issues not raised.[8]

The order of the common pleas court will be affirmed, modified for clarification as stated above.

## ORDER

Now, April 21, 1981, the order of the Court of Common Pleas of York County dated November 30, 1979 is modified to hold that Section 203.9 of the Hopewell Township Zoning Ordinance is unconstitutional and void and that subsection 203.2(1) thereof is unconstitutional and void except as it authorizes a one-family dwelling as a permitted use in the zoning district, but nothing herein shall exempt the subdivision here proposed by appellants, as it may be encompassed in a subdivision application, from compliance with other provisions of the Hopewell Township Zoning Ordinance and those of any other applicable laws, including subdivision regulations, if any; as thus modified, that order is affirmed.

---

[8] In this respect, the record refutes the township's claim that the subdivision enabling law (MPC §107(21)) issue was not raised by landowners below. See the Notice of Appeal below, par. 12c, which raised that issue very specifically, by stating that one of the challenges filed with the Board was that "The ordinances attempt to regulate subdivisions which are excluded from township regulation by Article I, Section 107(21) of the Pennsylvania Municipalities Planning Code. . . ."

The same Notice of Appeal preserved that statutory limitation issue before the court below by concluding with a prayer for relief which expressly prayed the court to determine that

The challenged ordinance sections 203.2 and 203.9 are exclusionary zoning, confiscatory, vague, unreasonable, arbitrary, capricious *and exceed the statutory limitations of the Pennsylvania Municipalities Planning Code.* (Emphasis supplied.)

This decision was reached before the expiration of the term of office of Judge WILKINSON, JR.

---

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent.

Regulation of lot size has been held by this court to be a proper function of zoning when it is reasonably related to the public health, safety, or welfare and does not have an exclusionary purpose or effect. *De-Caro v. Washington Township,* 21 Pa. Commonwealth Ct. 252, 344 A.2d 725 (1975).

Unquestionably, Sections 203.2 and 203.9 of the Ordinance impose restrictions on those owning farmland in Hopewell Township. Unless a property owner is able to sell a portion of his parcel to the owner of an adjacent "bona fide" farm, the subdivision of prime—*not all*—agricultural zoned land is limited to five lots per tract to be used for residential purposes, each not to exceed 1½ acres in size.

In *National Land & Investment Co. v. Easttown Township Board of Adjustment,* 419 Pa. 504, 523, 215 A.2d 597, 607-08 (1965), our Supreme Court stated: "Every zoning case involves a different set of facts and circumstances in light of which the constitutionality of a zoning ordinance must be tested. Therefore, it is impossible for us to say that any minimum acreage requirement is unconstitutional per se."

The law in this Commonwealth is that there is a presumption of constitutional validity that attends legislative enactments, including those of municipal bodies in the form of ordinances. A further rule is that the burden of proof, when legislation is under attack on constitutional grounds, is on the one so asserting and never shifts. *Bilbar Construction Co. v. Easttown Township Board of Adjustment,* 393 Pa. 62, 141 A.2d 851 (1958).

In the instant case, the Board made findings of fact 20 and 23, basing them on substantial evidence:

(20) The agricultural acreage of Hopewell Township is of such quality as to be worthy of preservation and the preservation of such is consistent with York County needs and planning goals as expressed in the County Land Use Plan and in the Agricultural Preservation Study.

. . . .

(23) Productivity of farms and efficiency of farming operations would be decreased by the division of productive farms into ten (10), twenty (20) or less than fifty (50) acre tracts and in addition, interfere with conservation practices.

With these findings of fact in mind, I am in full agreement with the following portions of Judge CASSIMATIS' dissenting opinion filed in the lower court:

Sections 203.2 and 203.9 of the zoning ordinance relate in a positive way to the planning goals and policy of the township. They provide the opportunity for some limited development, but not at the expense of carving up rural landscape into 'farmettes'. Permitting one-acre lots throughout *prime* agricultural zones would have a negative impact in *prime* agricultural tracts because of the potential of the latter being carved up into units no longer viable for farming and, at the same time, would mean less housing units going into residential areas, thus making it more expensive to provide services and facilities in the residential zones to a few number of housing units. The trend in York County is toward increased size of farming operations.

... The ordinance provides residential units in residential zones as well as *non-prime* agricultural zones in numbers sufficient to meet the projected growth of the Township for the next twenty years. Owners of *prime* agricultural land can sell the entire tract to whomever they please. Such owner's right to subdivide is limited to five lots for residential purposes of one and one-half acres maximum size. Such subdivided residential lots and the retained *prime* agricultural land may be conveyed to whomever the owner chooses. The Township has regulated the use of the land and has not proscribed to whom the land may be conveyed. In fact, the right to subdivide even the retained *prime* agricultural use portion is permitted if the subdivided part is added to an adjoining bona fide farm. I do not find such restrictions unreasonable in light of the need to preserve *prime* agricultural land. The evidence before the board clearly shows that the smaller the size of agricultural land, the less likely it is to continue in agricultural use. The farming efficiencies and economic superiority of larger agricultural tracts is well established in the record. (Emphasis in original.)

Accordingly, where no additional testimony was taken by the lower court, our function on this appeal is to examine the decision of the Board—that the requirements of Sections 203.2 and 203.9 of the zoning ordinance are reasonably related to the preservation of the *prime* agricultural character of the area and are constitutional—to determine whether the Board committed an abuse of discretion or an error of law. My reading of this record convinces me that it did not and, accordingly, I would reverse the order of the lower court.

I will conclude this dissent with the apt observation made by our Supreme Court in *Bilbar Construction Co. v. Easttown Township Board of Adjustment, supra,* which is equally applicable here:

> While the promotion of the public health, safety, morals or general welfare is the test for checking subjectively whether a municipality's exertion of its constitutional power to zone has been exceeded, courts do not apply the criteria in a vacuum. Someone must be injured by the ordinance's restrictions in order to raise the constitutional question, and the applicable objective test is whether the ordinance operates in an arbitrary, capricious, discriminatory or confiscatory manner as to the property of the complainant. The latter inquiry calls for judicial determination. But, as to the former, what serves the public interest is primarily a question for the appropriate legislative body in a given situation to ponder and decide. And, so long as it acts within its constitutional power to legislate in the premises, courts do well not to intrude their independent ideas as to the wisdom of the particular legislation. Specifically, with respect to zoning enactments, judges should not substitute their individual views for those of the legislators as to whether the means employed are likely to serve the public health, safety, morals or general welfare.

393 Pa. at 72, 141 A.2d at 856.

Judge MacPhail joins in this dissent.

---

DISSENTING OPINION BY JUDGE WILLIAMS, JR.:

I must respectfully dissent.

The majority opinion presents three premises for the invalidity of the pertinent sections of the Hope-

well Township Zoning Ordinance: (1) it violates Section 107(21) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10107(21), (2) it has no rational relationship to its avowed purpose of preserving prime agricultural land, and (3) 53 P.S. §11011, the provision of the MPC which provides the court with direction for declaring an ordinance invalid, is an unconstitutionally impermissive transgression of the separation of legislative and judicial powers. Although I cannot say that I necessarily favor the ordinance as articulated, I believe that this Court should not even address these issues; we cannot direct our attention to the merits, because the Common Pleas Court has failed to make the findings required by Section 1011(1) of the MPC, 53 P.S. §11011(1).

That section permits the lower court to make a pronouncement that the ordinance before it is invalid *only if* it makes certain specifically delineated findings of law. In this case, no such findings are contained in the record. I submit that when the legislative mandate is as decisive as that of Section 1011(1), which actually precludes a court from invalidating the ordinance before it without making one of the required determinations, the judiciary cannot disregard that instruction.

I would, therefore, remand this case to the lower court, directing it to make findings consistent with its order. Additionally, however, I feel constrained to voice objections to some aspects of the majority opinion aforementioned.

I

Section 107(21)[1] of the MPC, 53 P.S. §10107(21), defines "subdivision," and ends with the statement

---

[1] Although I am directing discussion to the majority interpretation of this particular statute, I note that the issue was not raised

that land to be used for agricultural purposes, divided into lots of more than ten acres, with no streets or access easements involved, "shall be exempted." The question is: from *what* shall it be exempted?

The majority interprets the language as exempting such lots from the grant to municipalities of the power to regulate such subdivisions. Such an interpretation is extremely broad, and not easily susceptible of ascertainment.

A far more limited interpretation would be that more-than-ten-acre plots are exempted from the definition of subdivision itself, that Section 107(21) does not include this type of land division. If that were the case, then such plots would be exempted from subdivision regulation, *i.e.*, the filing of a subdivision plan. *See Suburban Group, Inc. v. Gittings,* 22 Pa. Commonwealth Ct. 295, 348 A.2d 490 (1975), in which the owner of a former farm wanted to divide it into homesites, did not wish to file a subdivision plan, and applied for a permit to erect a dwelling on a 10.002 acre plot. The township code enforcement officer refused, "because of the applicant's failure to apply for and receive subdivision approval." 22 Pa. Commonwealth Ct. at 297.

The landowner argued that, as long as the land is located in a district zoned agricultural, and the requested use is permitted in that zone, then Section 107(21) exempts larger-than-ten-acre plots from *subdivision regulation.* The township, on the other hand, interpreted Section 107(21) as mandating that the pertinent lots be intended for agricultural purposes, to receive the benefit of exemption from *subdivision regulation.*

---

before the lower court either as an objection to a ruling by the zoning board, or as assignment of an error by the board, and was therefore not preserved for appeal.

After acknowledging that the issue was contained in Section 107(21) of the MPC, 53 P.S. §10107(21), this Court stated in dicta[2] that

> we would be inclined on first blush to decide in the same manner as did the Franklin Township Code Enforcement Officer—that is, that the exemption applies only where the principal use intended to be made of the subdivided land is agricultural.

*Id.* at 300.

The exemption referred to is patently from *subdivision regulation.*

Furthermore, the broad scope of the exemption postulated by the majority cannot be accepted, when read in conjunction with Section 604(3) of the MPC, 53 P.S. §10604(3).[3]

The Statutory Construction Act of 1972, 1 Pa. C. S. 1501 *et seq.* contains the following directives:

(1) "Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa. C. S. 1921 (a).

(2) "[T]he General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa. C. S. 1922(1).

(3) "Whenever a section or part of a statute is amended . . . the remainder of the original statute and the amendment shall be read together and viewed as one. . . ." 1 Pa. C. S. 1953.

---

[2] The lower court order requiring that the permit be issued was vacated because of a procedural defect. The landowner had appealed the code enforcement officer's decision directly to the common pleas court, without going to the Zoning Hearing Board.

[3] "The provisions of zoning ordinances *shall* be designed: . . . (3) to preserve prime agriculture and farmland considering topography, soil type and classifcation, and present use." (Emphasis added.)

Section 604(3), as noted in footnote eight of the majority opinion, was added to the MPC after the commencement of this action, but nevertheless relates to it. If we interpret Section 107(21) as the majority would have us, we must then construe the two sections as saying that although zoning ordinances "shall" preserve prime agriculture and farm land, they can do so only in lots of ten acres or less. That construction is not only absurd; it renders Section 604(3) totally ineffective.

I therefore cannot acquiese in the majority interpretation of Section 107(21).

## II

The question of the constitutionality of Section 1011(1) of the MPC, 53 P.S. §11011(1) is not properly before this Court, since it was not raised by the parties. It is within the scope of neither the obligation nor the authority of this Court to raise non-jurisdictional issues *sua sponte,* and direct argument thereon. Only issues properly preserved in the lower court should be addressed on appeal of same to this Court. *Accord, Dilliplaine v. Lehigh Valley Trust Company,* 457 Pa. 255, 322 A.2d 114 (1974).

Although this Court may strongly object to what it perceives as a legislative tethering of necessary judicial integrity, it nevertheless is obligated to refrain from such a determination until the issue is presented to it for examination.

The Court, after raising the constitutional issue on its own motion, and directing and hearing reargument thereon, gave the Attorney General belated notice of the question, with the option of filing a pertinent brief. There has not been, and cannot be, compliance with that portion of Pa. R.A.P. 521(a), which mandates that a *party* give notice to the Attorney General of a constitutional challenge to a statute, *"together*

*with a copy of the pleadings or other portion of the record raising the issue,"* nor is there any proof of service in the record, as is further directed by the said rule.

This judicial interjection of new questions sets a dangerous precedent which is repugnant to the traditional role of the Court as neutral arbiter of those specific issues upon which the parties perceive themselves to be at odds. As then-Justice OLIVER WENDELL HOLMES stated in *Barker Painting Company v. Local 734, Brotherhood of Painters,* 281 U.S. 462, 463 (1930), "a court does all that its duty compels when it confines itself to the controversy before it."

JUDGE MACPHAIL JOINS IN PART I OF THIS DISSENT.

---

DISSENTING OPINION BY JUDGE MACPHAIL:

I join in Judge MENCER's dissent and in Part I of Judge WILLIAMS' dissent. Additionally, with respect to Section 107(21) of the MPC, I would hold that that issue was not preserved by the landowners in their appeal to the York County Court of Common Pleas. *Clemens v. Upper Gwynedd Township Zoning Hearing Board,* 3 Pa. Commonwealth Ct. 71, 281 A.2d 93 (1971).