Boundary Drive Associates, Appellant *v.* Shrewsbury Township Board of Supervisors et al., Appellees.

Boundary Drive Associates *v.* Shrewsbury Township Board of Supervisors et al. Shrewsbury Township Board of Supervisors, Appellant.

8

Argued January 31, 1984, before President Judge CRUMLISH, JR. and Judges ROGERS, WILLIAMS, JR., CRAIG, MACPHAIL, DOYLE and BARRY.

*Edward B. Golla,* for appellant/appellee, Boundary Drive Associates.

*Gilbert G. Malone,* for appellant/appellee, Shrewsbury Township Board of Supervisors.

OPINION BY JUDGE CRAIG, March 9, 1984:

Boundary Drive Associates appeals from an order of the Court of Common Pleas of York County, which affirmed a decision of the Shrewsbury Town-

ship Zoning Hearing Board denying Boundary a variance and rejecting its challenge to the validity of portions of the township's zoning ordinance. The issues for our review are whether the board erred in denying the "validity variance" or in rejecting the challenge to the validity of the agricultural zoning provisions of the ordinance, and whether the ordinance section governing fees is valid.

In 1975, when the township had no zoning ordinance, Boundary purchased a 43-acre tract of prime farm land. Boundary filed a 72-lot subdivision plan which, in accordance with a subdivision land development ordinance, proposed connection to a public sewer system; the plan was deemed approved as of July 25, 1976, because of the township's failure to act.[1] In November, 1976, the township passed its first zoning ordinance, classifying Boundary's land as A-Agricultural. Upon Boundary's request, the township formally approved its subdivision plan on September 6, 1978, specifically stating that the township would not assist Boundary in securing sewer service.

No further action was taken on Boundary's 1976 plan, and, pursuant to a second plan, approved and filed in 1979, Boundary subdivided and sold three one-acre lots. In October, 1980 Boundary filed a request for a "validity variance" and a challenge to the validity of the agricultural zoning provisions (§§5.00-5.04(9)) and the fee provision (§14.30) of the ordinance. With that challenge, Boundary also filed a proposed third subdivision plan, which would divide the tract into 67 lots having on-site septic systems.

---

[1] Section 508(3) of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10508(3) provides that a pending application is deemed approved when the governing body fails to render a decision within the applicable time limit.

The board denied the requested "validity variance" and upheld those sections of the zoning ordinance which affected Boundary's proposal, specifically §§5.03(1), 5.04(1), 5.04(4) and 14.30. On appeal, the trial court, in a thorough and careful opinion by Judge JOHN T. MILLER, affirmed the board on the variance and agricultural zoning issues, but concluded that a portion of §14.30, the fee provision, was invalid.

### "Validity Variance"

In support of its requested "validity variance", Boundary contends that, because the township attached the statement concerning sewer service to its approval of Boundary's first subdivision plan, the result was a defacto amendment to the township zoning map, placing Boundary's property in a unique residential zone. The board erred, Boundary argues, by refusing to grant a "validity variance" from those residential sections of the zoning ordinance which would prohibit Boundary's proposed development.

That argument misapprehends the present posture of the case. Only the third subdivision plan, which Boundary submitted with its challenge to the ordinance, is presently relevant. The rather tortured history of Boundary's first proposed subdivision plan cannot serve to create the hardship necessary to justify a "validity variance" for development under its currently proposed plan.

One who seeks a "validity variance", that is a declaration that an otherwise valid ordinance is confiscatory when applied to a particular tract of land because it deprives the owner of any reasonable use of his property, must comply with the statutory requirements for a variance found in section 912 of the

Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10912.[2] *A & D, Inc. v. Zoning Hearing Board,* 32 Pa. Commonwealth Ct. 367, 379 A.2d 654 (1977). Because Boundary produced no evidence to meet those requirements, we conclude that the board correctly denied Boundary's request for a variance.

### Agricultural Zoning Provisions

We note initially that both the legislature[3] and the courts[4] have endorsed the protection and preservation of agricultural land as a legitimate zoning goal. The board found as fact that 78% of the land in the township was "highly suitable" for agriculture and that the township had as an "underlying principal purpose" the preservation of agricultural lands and agriculture as a viable industry.

To address that purpose, the township enacted §§5.00-5.04(9), and in answer to Boundary's challenge, the board specifically upheld the validity of §5.03(1) (minimum lot size of approximately one acre), §5.04

---

[2] Section 912 requires proof that:

(1) the property has unique physical characteristics;

(2) there is no possibility of development under the ordinance;

(3) the unnecessary hardship was not created by the applicant;

(4) the variance will not alter the essential character of the area; and

(5) the variance is the minimum necessary for relief.

[3] Section 603(b)(5) of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. 10603(b)(5) provides that zoning ordinances may contain:

Provisions for the protection and preservation of natural resources and agricultural land and activities.

[4] See *Hopewell Township Board of Supervisors v. Golla,* 499 Pa. 246, 452 A.2d 1337 (1982); *Hopewell Township Board of Supervisors v. Golla,* 58 Pa. Commonwealth Ct. 572, 428 A.2d 701 (1980).

(1) (limiting number of dwellings on each tract),[5] and §5.04(4) (limiting new dwellings to poorer soil types).[6] Boundary contends here that the combina-

---

[5] Section 5.04(1) provides, in relevant part:

Single family detached dwelling are permitted by right in the A-Agricultural District but shall in addition be strictly regulated by the following provisions:

1. Permitted Dwellings—Upon each parcel of land as it existed on November 10, 1976 there shall be permitted the following number of dwelling units, including those existing on November 10, 1976.

| Size of Parcel | Number of Dwellings Permitted |
|---|---|
| 0-5 acres | 1 |
| 5-15 acres | 2 |
| 15-30 acres | 3 |
| 30-60 acres | 4 |
| 60-90 acres | 5 |
| 90-120 acres | 6 |
| 120-150 acres | 7 |
| over 150 acres | 8 plus 1 dwelling for each 30 acres over 150 acres |

[6] Section 5.04(4) provides, in relevant part:

Soil Characteristics—Lots for single family dwellings shall be located upon land included within the following capability classes as classified by the Soil Survey of York County, Pennsylvania, Series 1959, No. 23 issued May, 1963:

Class III—Units IIIe-3 through IIIe-6.

Class IV—Units IVe-1 through IVe-7.

Class VI—Entire class.

Class VII—Entire class.

or on lots on lands which cannot feasibly be farmed, (a) due to existing features of the site such as rock outcroppings, or the fact that the area is heavily wooded; or (b) due to the fact that the size or shape of the area suitable for farming is insufficient to permit efficient use of farm machinery; provided, however, notwithstanding the provisions of this paragraph there shall be permitted a total of two dwellings on each parcel of land as it existed on November 10, 1976. In all cases such residential lots shall be located on the least agriculturally productive

tion of the limitation on permitted dwellings with the requirement that dwelling site be related to soil type produces an unreasonable, irrational, arbitrary and discriminatory zoning scheme.[7]

A zoning ordinance, like other legislative enactments, is presumed valid, and a challenger must meet the heavy burden of proving otherwise. *Schubach v. Silver*, 461 Pa. 366, 336 A.2d 328 (1975). In *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926), the United States Supreme Court established the now-familiar formulation that a zoning ordinance is valid, *i.e.* it is a reasonable exercise of the police power, when (1) it promotes public health, safety or welfare, and (2) the means are substantially related to the desired end.

The courts have, as Chief Justice Nix noted in *Surrick v. Zoning Hearing Board of the Township of Upper Providence*, 476 Pa. 182, 382 A.2d 105 (1977), employed a substantive due process analysis when applying that formulation. That approach requires that the reviewing court balance the public interest involved against the impact of the regulation on individual rights.

Hence, our task in the present case is to determine whether the challenged statutory scheme bears a

---

land feasible, and so as to minimize interference with agricultural production.

These terms are taken from the reproduction of the ordinance in the record, not from the slightly different version appearing in Boundary's brief.

[7] The township contends that we need not reach the question of the validity of §§5.04(1) and (4) because Boundary no longer argues that §5.03(1) is invalid, and the validity of that section alone is sufficient to block Boundary's plan. However, we recognize that the issue before us is framed as a challenge to the validity of the ordinance, and is not necessarily linked to Boundary's subdivision plan or its approval.

rational relationship to the goal of agricultural preservation. We must weigh the value of maximizing the productivity of prime farmland for the benefit of the entire community against the limitation of the landowner's choices concerning the number and location of dwellings on his property.

The ordinance provides that the owner of a stated number of acres on the effective date of the ordinance may build a stated number of dwellings on that tract, with the allowable number of dwellings *not* increasing in straight-line proportion to the size of the tract. The ordinance further requires that those dwellings be located on the less productive soil.[8] The effect is the preservation of prime agricultural soil by restricting the amount which will be lost to residential uses. Furthermore, the linkage of the requirements to a specific date maintains the effect of the limitations from that date forward and eliminates the possibility of repeated divisions into smaller parcels, each of which would be entitled to its own allotment of dwellings.

The ordinance which both this court and the Supreme Court rejected in the *Hopewell* case[9] is clearly distinguishable. The fatal flaw in that ordinance was its provision that all tracts in the agricultural zone could have a maximum of five residential plots, regardless of the size of the original tract. In contrast, the present ordinance links the number of permissible dwellings to both the size of the original tract and the quality of the soils present.

We conclude that the community interest in protecting irreplaceable prime agricultural lands is sufficiently strong to outweigh the limitation of the

---

[8] See text in footnotes 4 and 5.

[9] 499 Pa. 246, 452 A.2d 1337 (1983) ; 58 Pa. Commonwealth Ct. 572, 428 A.2d 701 (1980).

owner's ability to use his land as he wishes, particularly where no landowner is prohibited from having at least one dwelling.

With respect to its contention that the ordinance is arbitrary and discriminatory, the burden was on Boundary to prove that the ordinance did not bear alike on all persons and had no reasonable basis for the disparity of treatment. *Hopewell,* 499 Pa. 246, 452 A.2d 1337 (1982).

Although it is true that the challenged ordinance permits a greater density of residential use on smaller tracts, [10] the disparity rests on reasonable grounds. If the ordinance were to permit maximum density to increase in straight-line proportion with the size of the tract, then the owner of 100 acres could have 100 one-acre residential lots, losing the assurance that a useable area of prime agricultural land would be left available. Even if the ordinance allowed clustering, by dispensing with the one-acre lot area minimum, the presence of 100 dwellings and associated amenities is clearly incompatible with the existence of productive agriculture on the same 100 acres.

We concur with the conclusion of the board and of the trial court that the challenged provisions bear a rational relationship to the stated goal of the agricultural preservation and do not effect irrational or discriminatory results.

---

[10] The following table illustrates the densities which application of the ordinance might produce:

| Acres | Residential lots | Density (residences:acre) |
|-------|------------------|---------------------------|
| 2 | 1 | 1:2 |
| 5 | 1 | 1:5 |
| 15 | 2 | 1:7.5 |
| 25 | 3 | 1:8.3 |
| 50 | 4 | 1:12.5 |
| 100 | 6 | 1:16.7 |
| 150 | 7 | 1:21.4 |

## Stenographic Costs

The township has cross-appealed the trial court's decision invalidating §14.30 of the ordinance. That section provides, in effect, that the township may charge one who appeals to the Zoning Hearing Board with all costs connected with the board's hearing.[11]

The trial court, relying on *Appeal of Martin,* 33 Pa. Commonwealth Ct. 303, 381 A.2d 1321 (1978), concluded that section 1008(2) of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §11008(2),[12] required the township to bear the cost of providing the reviewing court with the transcript of the board's proceedings.

The township contends that *Martin* does not control the present case because the township here has established a fee schedule designed to recover costs and no such schedule existed in *Martin.*

We observe, however, that the construction which the court placed on section 1008(2) was in no way dependent upon whether or not the governing body

---

[11] Section 14.30 of the ordinance provides, in relevant part:
*Fees*
At the time of making an appeal or application to the Zoning Hearing Board . . . each appellant . . . shall submit a deposit to the Township in accordance with a fee schedule adopted by resolution of the Board of Supervisors. The deposit is established to reimburse the Township for all reasonable advertising, stenographic, engineering or planning services incurred by the Township in connection with the . . . hearing before the Zoning Hearing Board. . . .

[12] Section 1008(2) provides, in relevant part:
Upon filing of a zoning appeal, the prothonotary or clerk shall . . . send to the . . . board . . .whose decision or action has been appealed . . . a writ of certiorari commanding said . . . board . . . to certify to the court its entire record . . . including any transcript of testimony in existence and available to the . . . board. . . .

had enacted a fee schedule, and conclude that the trial court correctly followed *Martin* by imposing the cost of the court's transcript upon the township.

ORDER

Now, March 9, 1984, the orders of the Court of Common Pleas of York County, at No. 81-S-2063, dated April 18, 1983, and May 24, 1983, are affirmed.