Leopold Schuster and Manfred Schuster, Appellants *v.* The Plumstead Township Zoning Hearing Board, Appellee.

Argued June 8, 1982, before President Judge CRUMLISH, JR. and Judges ROGERS, CRAIG and MAC-PHAIL.

272

*Marvin L. Portney,* for appellants.

*George M. Bush,* with him *Stephen B. Harris, Hartzell & Bush,* for appellee.

OPINION BY JUDGE BLATT, October 1, 1982:

Leopold and Manfred Schuster (appellants) appeal an order of the Court of Common Pleas of Bucks County which affirmed a decision of the Zoning Hearing Board (Board) of Plumstead Township (Township) denying their constitutional challenge of an ordinance which prohibits "junk, salvage or automobile wrecking yards" within the Township.

The appellants propose to conduct an automobile wrecking and recycling center on a 4.7 acre tract which, when full, would hold as many as 1000 vehicles. Under the proposed use, they would acquire approximately 20 late model wrecked automobiles and trucks per week from insurance company salvagers and would then strip these vehicles of useable parts for on-site resale from a proposed 50′ by 100′ building. The remains would be stacked, in rows 20 to 25 feet high, by a crane which would be located there, and

the entire site would be surrounded by an eight-foot fence. Periodically, the stacks would be crushed and removed from the premises.

Because the trial court received no additional testimony, our scope of review is limited to a determination of whether or not the Board abused its discretion or committed an error of law. *Harper v. Zoning Hearing Board of Ridley Township,* 21 Pa. Commonwealth Ct. 93, 343 A.2d 381 (1975). The appellants maintain that the Board erred as a matter of law in denying them permission to conduct their automobile wrecking and recycling operation on their property.

Where, as here, a zoning ordinance *totally* excludes a use from a Township, we must first determine whether or not such exclusion is *prima facie* valid because the use is objectionable or illegitimate by nature. *Township of Paradise v. Mt. Airy Lodge, Inc.,* 68 Pa. Commonwealth Ct. 525, 449 A.2d 849 (1982); *Appeal of Green & White Copter, Inc.,* 25 Pa. Commonwealth Ct. 445, 360 A.2d 283 (1976). If the use is found to be objectionable or illegitimate, then the ordinance retains its presumption of validity and the party who challenges it bears the burden of proving its unconstitutionality. *Green & White Copter.* However, if the use is found to be legitimate or non-objectionable, the burden then shifts to the Township to establish that the ordinance bears a "substantial relationship to public health, safety, morals and general welfare." *Exton Quarries, Inc. v. Zoning Board of Adjustment,* 425 Pa. 43, 60, 228 A.2d 169, 179 (1967) (quarrying operation within a township held to be a legitimate use); *see also Beaver Gasoline Company v. Osborne Borough,* 445 Pa. 571, 285 A.2d 501 (1971); *Mt. Airy Lodge; Green & White Copter.*

Initially, the appellants argue that their proposed operation would constitute a legitimate business not objectionable by nature and that the Board and the trial court erred in concluding to the contrary. In *Township of Harborcreek v. Christopher*, 184 Pa. Superior Ct. 205, 209-210, 132 A.2d 714, 716 (1957), the court, in describing the nature of an automobile salvage yard, and in finding that such use could not be prohibited by ordinance as a nuisance *per se*,[1] stated that "[t]he business of operating [an automobile] junk yard is a legitimate enterprise which, while offending the aesthetic taste, does not constitute a dangerous business or one known to be inherently injurious or harmful to the public." Decisions by the courts of this Commonwealth and other states support this observation. *See, e.g., Commonwealth v. Hanzlik*, 400 Pa. 134, 161 A.2d 340 (1960); *Kadash v. City of Williamsport*, 19 Pa. Commonwealth Ct. 643, 340 A.2d 617 (1975); *Bachman v. State*, 235 Ark. 339, 359 S.W. 2d 815 (1962); *Township of Garfield v. Young*, 348 Mich. 337, 82 N.W. 2d 876 (1957); *Township of Andover v. Lake*, 89 N.J. Super. 313, 214 A.2d 870 (1965); *Vermont Salvage Corp. v. Village of St. Johnsbury*, 113 Vt. 341, 34 A.2d 188 (1943). We believe, therefore, that the appellants' proposed automobile wrecking and recycling operation would be a legitimate or non-objectionable use and consequently, *Mt. Airy Lodge*, we must next determine whether or not the Township had justified its ordinance by establishing that it bears a substantial relationship to

---

[1] We note that the considerations in reviewing an ordinance which attempts to prohibit an auto junkyard as a nuisance *per se* and an ordinance which totally excludes such use are similar: both require an initial determination regarding whether or not the use is inherently or facially dangerous to the public health, safety, morals and general welfare—the police power. *Compare Christopher with Green & White Copter.*

the public health, safety, morals and general welfare in this situation.

Our review of the record discloses testimony, much of which was given by an expert witness testifying on behalf of the Township, which supports the Board's findings that the appellants' proposed use would adversely impact upon the environment and the public.

An environmental expert, noting that the entire Township's water supply was solely from well water, testified that in his opinion various pollutants, such as ethylene glycol (used in antifreeze), battery acid, and petroleum derivatives would inevitably leak[2] from the wrecked vehicles and were likely to seep into the ground water or to combine with surface run-off sufficient to pose a threat[3] to public health, safety and

---

[2] He testified that this pollution could occur from inadvertent spills, leaky storage vessels, intentional spillage, fluids being washed directly off of the stored vehicles by rains, or from fluids which had been deposited on the ground after salvageable parts were degreased by steam or other chemicals and then washed further into the soil or surface water by rain.

[3] Regarding the ethylene glycol, a known carcinogen, the expert testified:

The water pollution point of view would fall into the fact that Plumstead Township is solely served for water supply for both private and commercial water uses, by well water. In the handling of wrecked vehicles, you have approximately five gallons, a five gallon capacity in an automobile radiator. The most common system coolant used in automobile radiators is Ethylene Glycol. The recommended amount of Ethylene Glycol is 20 to 40 percent, 100 milliliters of Ethylene Glycol is a fatal dosage for a human being. This is documented by the Department of Public Health and supported by OSHA, United States Regulatory Agency, fairly well documented. One hundred milliliters represents approximately a half a cup. The automobile radiator, on the limit in this area, is 20 percent Ethylene Glycol. Five gallons contains about one

welfare wherever such water was used for human consumption.

In view of the aforementioned evidence in the record, we believe that the Township has justified its total prohibition of the use proposed by the appellants. It has established an obvious and substantial relationship of such use to police power concerns, and we must, therefore, affirm the order of the trial court.

### ORDER

AND NOW, this 1st day of October, 1982, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is hereby affirmed.

---

gallon of Ethylene Glycol. In handling wrecked vehicles you have a potential to lose all of that toxic or hazardous chemical into the groundwater. . . .

In the cleanest operation, you would still have losses, but potentially, you have a loss rate of one gallon per vehicle, twenty gallons [the appellants plan to acquire approximately 20 vehicles per week] a week, twenty gallons of toxic substance that can be introduced into the groundwater of Plumstead.

He then went on to opine as to the negative public health safety, and welfare effects of petroleum derivatives and battery acid in the water system.