## Lower Southampton Township Board of Supervisors, Appellant *v.* Herbert Schurr, Appellee.

Argued December 16, 1982, before Judges Rogers, Williams, Jr. and MacPhail, sitting as a panel of three.

*Pamela R. Reiss, Lawler and Gonzales,* for appellant.

*E. Dillwyn Darlington,* for appellee.

*George M. Bush,* for Amici Curiae.

Opinion by Judge MacPhail, February 28, 1983:

The Lower Southampton Township Board of Supervisors (Board) has appealed from an order of the Court of Common Pleas of Bucks County which reversed a decision of the Board and concluded that the zoning ordinance of Lower Southampton Town-

ship (Township) unconstitutionally excludes automobile salvage yards. We affirm.

The record in this case reflects that Herbert Schurr (Appellee) filed a request for a curative amendment with the Board pursuant to Sections 609.1 and 1004 (1)(b) of the Pennsylvania Municipalities Planning Code (MPC)[1] on or about July 24, 1980.[2] Appellee proposes to use a 19.15-acre tract of land as an automobile salvage yard for the dismantling of automobiles and on-site sales of the used automobile parts. Appellee anticipates that up to 500 automobile "shells" will be stored on the property at any given time. Appellee alleges in his written request for a hearing on his challenge that the zoning ordinance totally excludes automobile salvage yards and is, therefore, invalid. After several hearings on the challenge, the Board concluded, *inter alia,* that Appellee lacked standing to institute the challenge and that, in any event, the ordinance does make provision for automobile salvage yards and, thus, is constitutional. Appellee prevailed in his appeal to the court of common pleas and the Board subsequently perfected its appeal to this Court.

The following issues have been presented for our consideration: 1) whether Appellee had standing to file a request for a curative amendment[3] and 2) if so, whether the Township's zoning ordinance unconstitutionally excludes automobile salvage yards.

---

[1] Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§10609.1 and 11004(1)(b).

[2] Appellee's application for a use and/or occupancy permit was denied by the Township's zoning officer by letter dated July 17, 1980.

[3] In its brief, the Board also raises the issue of whether Appellee had standing to file an application for a zoning permit with the Township zoning officer. Since only the curative amendment proceedings are before us in the instant appeal, we need not rule

Where, as here, the court of common pleas has taken no additional evidence, our scope of review is limited to a determination of whether the Board committed an abuse of discretion or an error of law. *Township of Paradise v. Mt. Airy Lodge, Inc.*, 68 Pa. Commonwealth Ct. 548, 449 A.2d 849 (1982).

Addressing ourselves first to the standing issue, Section 609.1 of the MPC, 53 P.S. §10609.1 provides that "landowners" may submit curative amendment requests to the governing body. Section 107(12) of the MPC, 53 P.S. §10107(12), in turn, defines a "landowner" as:

> [T]he legal or beneficial owner or owners of land *including the holder of an option or contract to purchase (whether or not such option or contract is subject to any condition)*, a lessee if he is authorized under the lease to exercise the rights of the landowner, or other person having a proprietary interest in land, shall be deemed to be a landowner for the purpose of this act. (Emphasis added.)

In the instant case, Appellee executed a sales agreement on June 17, 1980 which constituted an irrevocable offer to purchase the subject tract of land from The Penn Central Corporation (Penn Central) subject to certain conditions related to the zoning dispute here at issue. The Appellee's irrevocable offer was formally accepted by Penn Central on September 11, 1980. The Board concedes that Appellee is currently the equitable owner of the subject property, but argues that until Penn Central actually accepted Appellee's offer on September 11, he had no standing as a "landowner" to file a curative amendment re-

on issues relative to the separate zoning permit proceedings. We note that the court of common pleas also did not rule on this second issue of standing.

quest. The Board, accordingly, contends that Appellee's request, which was filed on July 24, 1980, was fatally defective. We disagree.

While, strictly speaking, Appellee was not the holder of a fully executed "contract to purchase" when he filed his curative amendment request, we think that any defect in the original request was cured when, on September 11, Penn Central accepted Appellee's irrevocable offer to purchase the property. Appellee clearly would have had standing to file his request as of September 11 and since no proceedings on the application were held prior to that date, we think that Appellee, as the present equitable owner of the property, must be deemed to have standing. A similar conclusion was reached by the trial court.

Turning next to Appellee's constitutional challenge, we note initially that a person who challenges the constitutionality of a zoning ordinance must overcome its presumed validity. *Appeal of Green & White Copter, Inc.,* 25 Pa. Commonwealth Ct. 445, 360 A.2d 283 (1976). It is now well settled that the presumption of validity is overcome by a showing that the ordinance totally excludes an otherwise legitimate use. *General Battery Corp. v. Zoning Hearing Board, Alsace Township,* 29 Pa. Commonwealth Ct. 498, 371 A.2d 1030 (1977). In order for the presumption to be overcome, however, it must first be determined that the total prohibition is not *prima facie* valid due to the objectionable or illegitimate nature of the proposed use. *Schuster v. Plumstead Township Zoning Hearing Board,* 69 Pa. Commonwealth Ct. 271, 450 A.2d 799 (1982). If the use is found to be legitimate, the burden then shifts to the municipality to establish what police power interest is sought to be protected by the exclusion. *Beaver Gasoline Co. v. Os-*

*borne Borough,* 445 Pa. 571, 285 A.2d 501 (1971); *Moyer's Landfill, Inc. v. Zoning Hearing Board of Lower Providence Township,* 69 Pa. Commonwealth Ct. 47, 450 A.2d 273 (1982).

In the instant case, the Board first argues that the zoning ordinance does not totally prohibit automobile salvage yards within the Township. We cannot agree with this assertion. Section 809 of the ordinance, under the article entitled "General Regulations", provides that:

> No lot may be used as a junk yard, *automobile wrecking yard,* trailer camp, tourist cabin or automobile court, or commercial piggery; and no building may be erected, altered or used, and no lot may be used for any trade or business that is noxious or offensive by reason of odor, dust, smoke, gas, vibration, illumination or noise, or for any trade or business that constitutes an unusual public hazard from fire or explosion or other cause. (Emphasis added.)

Despite this apparent total prohibition of Appellee's proposed use, the Board nevertheless argues that an automobile salvage yard would be permitted by special exception in the Planned Industrial District or as a permitted use in the same district if the entire operation, including the storage of all automobiles, is conducted in completely enclosed buildings. In light of the unequivocal language contained in Section 809 and the fact that an important aspect of Appellee's proposal is the outdoor storage of cars before and after dismantling, we conclude that the ordinance effects a total exclusion of automobile storage yards.

The Board next argues that if the ordinance is found to be exclusionary, the exclusion is *prima facie* valid due to the objectionable nature of automobile

salvage yards. We believe that this issue is controlled by our recent *Schuster* decision where we concluded that an automobile wrecking and recycling operation similar to that proposed by Appellee here would be a legitimate use which, while perhaps not aesthetically pleasing, does not constitute a business generally known to be hazardous to the public.

We, thus, come to the final issue in the constitutional analysis, to wit, whether the Township has established that its total ban of automobile salvage yards bears a substantial relationship to the public health, safety and general welfare. We conclude that the Township has not met its burden. The evidence which the Board relied on in finding the ordinance constitutional consisted of potential traffic problems relating largely to access roads to the proposed site, the potential for ground water contamination on the site from various substances which might leak from the cars and percolate through the soil, and possible pollution of the nearby Neshaminy Creek. Our review of the record supports what is revealed from the Board's findings, *i.e.*, that the Township's evidence is site specific. We have previously held that site specific evidence will not suffice to justify a *total* municipality-wide exclusion of a particular use. *General Battery*. What we recently stated in *Moyer's Landfill, Inc.* is equally applicable to the facts of the instant case:

> [T]he township's whole case was devoted to attempting to establish that to permit Moyer to establish its landfill operation on the 131 acre site would have detrimental effect at the site and its environs whereas Moyer's constitutional challenge was to the facial validity of the ordinance, not to its effect upon the use of this property. There is little or nothing con-

cerning the township or the region as a whole, its population, its present and likely future land use development, or other characteristics from which any conclusion concerning the general public interests which might be benefited by the total exclusion of sanitary landfills could be formed.

*Id.* at 58, 450 A.2d at 278. We, accordingly, conclude that the Township has failed to meet its burden of demonstrating that the exclusion of automobile salvage yards bears a substantial relationship to health, safety and welfare concerns.

As a final matter, we must determine what relief Appellee is entitled to with regard to the subject tract of land. In this regard we note the provisions of Section 1011(2) of the MPC, 53 P.S. §11011(2). It does appear from the trial court's order, which directs that a zoning permit be granted subject to other valid ordinances in existence at the time the curative amendment request was filed, that the court was cognizant of Section 1011(2) and the definitive relief thereby required. Moreover, particularly in view of the nature of the use here proposed, we believe the court's statement in its opinion that site suitability is an appropriate consideration in fashioning relief for a successful challenger is also a correct application of Section 1011(2). We note, however, that in referring Appellee's plans back to the zoning authorities the court did not include reference to site suitability analysis in its order. In view of the court's direction in its opinion that any site suitability issues be considered by the zoning authorities on remand and in light of the mandatory language in Section 1011(2) concerning site suitability, we think it is appropriate to modify the trial court's order to include a direction that locational site suitability be considered by the appropriate

zoning authorities prior to the issuance of a zoning permit. We emphasize that this site review may *not* be used in a retributory manner to frustrate Appellee in receiving relief from what has already been determined to be an exclusionary ordinance. *See Casey v. Zoning Hearing Board of Warwick Township*, 459 Pa. 219, 328 A.2d 464 (1974). Rather, we think Section 1011(2) has as its primary purpose the prevention of clear harm to the public health, safety and welfare from the development of a *particular* site which harm would not occur if an alternative site in the municipality was instead developed. As we stated in *Ellick v. Board of Supervisors, Worcester Township*, 17 Pa. Commonwealth Ct. 404, 411-12, 333 A.2d 239, 244 (1975):

> [T]he governing body must permit the challenging landowner to develop the land as proposed . . . *provided, of* course, *that what is submitted is reasonable, and not injurious to the public health, safety, welfare and morals.* (Emphasis added.)

*See also Fox Chapel Borough Appeal*, 33 Pa. Commonwealth Ct. 256, 381 A.2d 504 (1978) (allegations that soil conditions on a particular site are unsuitable for proposed use should be considered in site suitability analysis subsequent to a successful ordinance challenge); R. Ryan, Pennsylvania Zoning Law and Practice §3.1.10 (Supp. 1982).

We also observe that the trial court is directed by Section 1011(2) to retain jurisdiction during any further proceedings before Township zoning authorities and that, upon motion of the landowner, the court may issue such supplementary orders as it deems necessary to protect the rights of the landowner. We think that this continuing jurisdiction will serve as an additional protection to Appellee to ensure that

his land development is not prevented for reasons of retribution.

The order of the court of common pleas is affirmed, as modified by the foregoing opinion.

ORDER

That part of the order of the Court of Common Pleas of Bucks County vacating and setting aside the decision of the Board of Supervisors of Lower Southampton Township is affirmed. The case is remanded to the court of common pleas for the entry of a supplemental order consistent with the provisions of Section 1011(2) of the MPC, 53 P.S. §11011(2) and the foregoing opinion. Jurisdiction relinquished.