In Re: Appeal of Daniel J. Carr, Jr. and Laura G. Carr, h/w, from the denial of a curative amendment application by the Board of Supervisors of New Britain Township. Daniel J. Carr, Jr. and Laura G. Carr, h/w, Appellants.

Argued April 5, 1977, before President Judge Bow-
man and Judges Crumlish, Jr., Wilkinson, Jr., Men-
cer, Rogers and Blatt. Judge Kramer did not partici-
pate.

*Richard P. McBride,* with him *Power, Bowen &
Valimont,* for appellants.

*George M. Bush,* with him *Albert L. Blackman, Jr.,*
and *Hartzel and Bush,* for appellee.

*Jan Z. Krasnowiecki,* for amicus curiae, Planning Commission of Springfield Township, Delaware County, Pa.

OPINION BY JUDGE ROGERS, May 27, 1977:

Daniel J. Carr, Jr. and Laura G. Carr, his wife, appeal from an order of the Court of Common Pleas of Bucks County affirming the rejection by the Board of Supervisors of New Britain Township of a proposed curative amendment to the township's zoning ordinance.

In 1967 and 1968, the Carrs purchased contiguous parcels of land, containing in the aggregate 12.063 acres of land in New Britain Township. At the time of purchase and thereafter until February 11, 1974, 4.7 acres of the appellants' property were located in a zoning district where commercial uses were allowed, and the remaining 7.363 acres were in a residential district. The Carrs bought the land for the purpose of consolidating their tire sales and service business which they had been conducting at three other locations. In 1967 they constructed a 9000 square foot building containing a sales area, an inventory storage area and eight service bays, to which they brought all of their operations. In 1968 they added 3600 square feet to their building in which they installed eight additional service bays. This structure stands on that part of their tract in which commercial uses are permitted.

Because their business at their new location continued to grow, the appellants, at some time in 1973 or 1974, filed with the township an application for a building permit for a further enlargement of their building. This application was rejected on the ground that a new zoning ordinance which would comprehensively rezone the township was then pending. The new ordinance, finally enacted on February 11, 1974,

placed appellants' entire 12.063 acre tract in a district where only residential uses were permitted with the result that the Carrs' use of part of the tract formerly zoned for commercial use became a valid nonconforming use. The new ordinance additionally contained a provision prohibiting all expansion of any nonconforming use. On June 10, 1974, the Carrs, desiring to challenge on substantive grounds the validity of this blanket prohibition of expansion of nonconforming uses, filed a request for a curative amendment with the Board of Supervisors pursuant to Section 1004(1)(b) of the Pennsylvania Municipalities Planning Code[1] (MPC), 53 P.S. §11004(1)(b). As required by Section 1004, the appellants submitted a sketch plan of their desired expansion. This plan showed a proposed 49,000 square feet addition to their existing 12,900 square feet building. They proposed that the ordinance be amended so as to permit them to expand their existing commercial use ''to whatever extent appropriate to accommodate the natural growth and expansion of such nonconforming use. . . .'' A series of public hearings were then conducted beginning on July 22, 1974 and concluding on January 13, 1975. On September 23, 1974 the Board of Supervisors, in apparent recognition of the constitutional infirmity of their blanket prohibition of the expansion of nonconforming uses, enacted a zoning amendment allowing by special exception the expansion of nonconforming uses to the extent of 50% of the existing use. On February 17, 1975, the Board of Supervisors responded to the Carrs' request for curative amendment by referring to its own amendment of September 23, 1974 and gave permission to an expansion of the appellants' existing building to the extent of 50% of its present size. On the Carrs' appeal, the Bucks County Court of Com-

[1] Act of July 31, 1968, P.L. 805, *as amended.*

mon Pleas, without taking additional evidence, concluded that the ordinance's blanket prohibition of expansion of nonconforming uses was indeed invalid but dismissed the appeal on the ground that the township's amendment of September 23, 1974 was a reasonable response to the Carrs' request and that it cured any infirmity of the original ordinance.

The appellants say that on an appeal from a governing body's denial of the request for curative amendment as proposed by a landowner, the lower court should initially determine whether the challenged provision is unlawful; and that, if the provision is found to be invalid, the court should decide whether the use proposed by the landowner is reasonable. They further contend that the court should pay no regard to any amendments enacted by the governing body which were not corrected or not pending at the time the landowner's challenge was submitted pursuant to Section 1004 of the MPC. We agree with this position.[2]

In *Ellick v. Board of Supervisors of Worcester Township*, 17 Pa. Commonwealth Ct. 404, 333 A.2d 239 (1975), Judge KRAMER carefully and thoroughly considered the provisions and many of the implications of Section 1004 and it is here appropriate to repeat some of what Judge KRAMER said for us there:

> The instant case is the first time this Court has dealt with a challenge to the validity of a zoning ordinance pursuant to section 1004(1)

[2] In *Schlanger v. Board of Supervisors of Buckingham Township*, 29 Bucks 280 (1976), the Bucks County Court of Common Pleas held that the court reviewing appeals from the denial of requests for curative amendments should not heed amendments which were not pending before the landowner submitted his request. That is, of course, contrary to the holding of the Bucks County Court here. In *Schlanger*, the inconsistency is accounted for by the fact that *Dublin Properties v. Upper Dublin Township*, 21 Pa. Commonwealth Ct. 54, 342 A.2d 821 (1975), had not come to the attention of those involved in the instant case.

(b) of the MPC, *as amended in 1972*, 53 P.S. §11004(1)(b). The present section 1004 was added to the MPC by the 1972 amendments which effected considerable change, both procedurally and substantively, in the MPC. Because the 1972 amendments are somewhat complex, and we notice an increasing number of appeals related thereto, we believe it will be helpful to all concerned to set forth guidelines to aid in the disposition of the type of case now facing us.

. . . .

Prior to the 1972 amendments, a landowner could challenge the validity of a zoning ordinance either at the time of its passage or later by filing an application for a zoning permit, and the variances and special exceptions incidental thereto.

Section 1004(1) of the MPC, 53 P.S. §11004 (1) now provides two additional methods for a landowner to challenge a zoning ordinance. He may submit his challenge to the zoning hearing board, or he may submit it to the governing body together with a request for a curative amendment under section 609.1 of the MPC, 53 P.S. §10609.1. Section 1004(2)(c) of the MPC, 53 P.S. §11004(2)(c) provides that a challenge to a zoning ordinance by either method 'shall be accompanied by *plans and other materials* describing the use of development proposed by the landowner in lieu of the use or development permitted by the challenged ordinance or map.' (Emphasis added.) The 'plans and other materials' submitted need not meet the more stringent standards necessary to obtain a building permit, so long as they provide reasonable notice to the governing body of the proposed

use or development. Section 1004(2)(c) of the MPC, 53 P.S. §11004(2)(c). (Emphasis in original.) (Footnotes omitted.)

17 Pa. Commonwealth Ct. at 408-11, 333 A.2d at 242-44.

Here, as in *Ellick*, the appellants chose to submit their Section 1004 challenge to the governing body. In *Ellick*, we described the reviewing court's duties in appeals from the action of the governing body in the following manner:

> After the governing body acts in a manner not acceptable to the landowner, or refuses to act on a curative amendment, and the matter is appealed to the courts, the curative amendment is no longer a viable matter at issue before the court. It is the duty of the courts of common pleas to decide the purely legal question of whether the challenged zoning ordinance is legal or constitutional; but, if the court decides the ordinance is illegal or unconstitutional, it may not control the manner in which or the extent to which the ordinance is to be amended.
>
> *If the court of common pleas determines that an ordinance is invalid as a matter of law, then it is the court's duty to review the governing body's action, if any, with respect to the 'plans and other materials' submitted with the landowner's challenge. As the Supreme Court noted in Casey, supra, the courts must go beyond mere invalidation and grant definitive relief. It would be grossly inequitable to reject a successful · challenger's reasonable development, considering the time and effort which must be invested in such a challenge.* Section 1011 of the MPC, 53 P.S. §11011, gives the court virtually unlimited power of review over the plans submitted. The court may order the plans sub-

mitted by the landowner approved as to all of its 'elements,' or order it approved as to some of them. It may refer some of the elements of the plans to the governing body and it may even disapprove the plan entirely. The court may even refer the 'plans and other material,' or parts thereof back to the governing body for disposition; but it may not remand, as we have noted, the challenge to the legality of the ordinance or the curative amendment. The court is directed by the statute to retain jurisdiction during the pendency of further proceedings and to issue, upon motion of the landowner, such supplementary orders as it deems necessary to protect the rights of the landowner.

We do not believe the 1972 amendments require a court of common pleas to undertake any responsibility for changing the plans of the landowner by order of court. In other words, it is not the responsibility of the courts of common pleas to modify or redesign landowners' plans, but rather only to rule upon what is presented to the court. We do not believe it would be proper for the courts of common pleas to go beyond the record and formulate such reasonable zoning regulations as the court believes should be applicable. *Rather we believe the function of the court is to pass upon the reasonableness of the restrictions present in the record, including both the restrictions contained in the landowners' plans and the restrictions present in the ordinance which are applicable to the same class of usage or construction. If the court finds that none of the restrictions present in the record are reasonable, then we believe the proper course would be to remand to the governing body for the formulation of*

*reasonable restrictions, which would then be*
*subject to review.* (Emphasis added.)

17 Pa. Commonwealth Ct. at 415-16, 333 A.2d at 246-47.

In *Ellick,* however,

[We did] not decide . . . what happens if the
governing body adopts a curative amendment
different from the one which was proposed by
the landowner.

17 Pa. Commonwealth Ct. at 411, 333 A.2d at 244.
We now address that issue; that is, whether an amendment adopted by the governing body after the landowner's submission of a request for curative amendment conclusively disposes of the challenge and limits the landowner to the relief afforded by the governing body's amendment; or whether the governing body's amendment is to be disregarded and the court required to grant the landowner definitive relief without regard to the municipality's attempted cure. We believe that the latter view is required by the weight of existing authority, by fairness to the landowner and by the practical consideration that the required application of the governing body's amendment to the condemnor's proposal would tend to introduce into the proceedings an ancillary suit over the validity of the municipality's amendment.

The issue was addressed in *Casey v. Zoning Hearing Board of Warwick Township,* 459 Pa. 219, 328 A.2d 464 (1974). The facts of *Casey* were that, on September 29, 1969, the governing body enacted a zoning ordinance which failed to provide for multi-family housing. The Supreme Court of Pennsylvania, on February 13, 1970, filed its opinion and order in *Girsh Appeal,* 437 Pa. 237, 263 A.2d 395 (1970), declaring that a zoning ordinance which failed to provide for multi-family housing was unconstitutional. The *Casey* landowner, on April 11, 1970, appealed to

the municipality for approval of his plan for develop-
ment containing multi-family dwellings and simultane-
ously challenged the validity of the municipality's
zoning ordinance. The municipality thereafter at-
tempted to cure its defective ordinance by what the
Supreme Court held to be a non-pending amendment.
The Supreme Court after discussion of the pending
ordinance doctrine concluded that:

> [W]e cannot allow a municipality to thwart a
> valid challenge to its zoning ordinance by adopt-
> ing a curative provision, which was not [pend-
> ing] prior to the time of the challenger's ap-
> plication.

*Casey, supra,* 459 Pa. at 229, 328 A.2d at 469.
We applied the same principle in *Dublin Properties v.
Upper Dublin Township*, 21 Pa. Commonwealth Ct.
54, 342 A.2d 821 (1975), where the landowner submit-
ted a Section 1004 challenge to a zoning ordinance
which did not permit the use of land for townhouses
and row homes. We said:

> The Planning Commission's report on Dub-
> lin's curative amendment 'endorsed' its intent
> 'to permit and control' townhouse development.
> The Township is apparently considering an
> amendment which will permit townhouses and
> thus cure the defect in the ordinance. Zoning
> amendments pending after the filing of a chal-
> lenge, however, are not applicable to the chal-
> lenging landowner's case.

*Dublin Properties, supra* at 60, 342 A.2d at 824. *Ac-
cord, McKee v. Township of Montgomery*, 26 Pa. Com-
monwealth Ct. 487, 364 A.2d 775 (1976).

Amicus curiae, the Planning Commission of Spring-
field Township (Commission), by its learned counsel
says that notwithstanding the pending ordinance doc-
trine, the MPC may be construed to allow the cure of
infirm ordinances by the governing body after chal-

lenge, referring to Section 802 of the MPC, 53 P.S.
§10802, which was repealed by the 1972 amendments
to the MPC and replaced by Section 1004. Old Section
802 required the challenging landowner to give notice
of his intention to seek judicial relief and allowed the
municipality sixty days thereafter as a time within
which to amend its ordinance. This former provision
of statutory law is advanced as a reason for giving
effect to the township's amendment limiting expan-
sion to 50% of existing nonconforming uses. It seems
that a more reasonable inference to be drawn from the
omission from the MPC by the 1972 amendments of
the scheme of former Section 802 would be that the
Legislature intended that voluntarily enacted amend-
ments should not affect a landowner's right to develop
his land in accordance with his wishes where he has
been unconstitutionally prevented from doing so.

No attack has been made on New Britain's zoning
amendment placing all of the Carrs' property within
a residential zone. Their activity thereby became a
lawful nonconforming use. We have concluded that
the court below correctly held that the zoning amend-
ment expressly prohibiting any expansion of a non-
conforming use was invalid. The reason for its in-
validity is that it denies persons conducting lawful
nonconforming uses their constitutional right to ex-
pand such uses. The effect of striking down New
Britain's prohibition of expansion is not that the
Carrs must be permitted to expand their nonconform-
ing use to the full extent expressed in their applica-
tion in these proceedings—an expansion of their pres-
ent 12,600 square feet building by the erection of a
49,000 square feet addition. Rather, the invalidation
of the township's blanket prohibition simply leaves
the Carrs with their constitutional right *to make "such
necessary additions to [their] existing structure as
were needed to provide for its natural expansion and*

*the accommodation of increased trade, so long as such
additions would not be detrimental to the public wel-
fare, safety and health.* Gilfillan's Permit, 291 Pa.
358, 362, 140 A. 136, 138 (1927); *Silver v. Zoning
Board of Adjustment,* 435 Pa. 99, 255 A.2d 506 (1969).
The Board of Supervisors of New Britain Township
and the court below decided that the Carrs' applica-
tion was subject to New Britain's amendment allow-
ing 50% expansion.[3] There having been no consid-
eration below of whether the Carrs' proposed expan-
sion is one to which they are entitled by the standard
of *Gilfillan's Permit, supra,* the case is clearly one
for remand. Our examination of the record of the
hearings convinces us that the Carrs' able counsel was
well aware of what it was necessary for his clients to
prove to bring themselves within that rule; and that
equally able counsel for the township was aware that
its defense ultimately would lie in proving either that
the addition to the structure was not necessary to pro-
vide for the natural expansion and accommodation
of increased trade, or that the addition would be detri-
mental to the public welfare, safety and health. The
record may therefore be adequate for a determination
of whether the Carrs' proposal fits the *Gilfillan* defi-
nition of their constitutional rights. As our quota-
tions from *Ellick supra,* show, the court below has
wide discretion. It may decide that the Carrs are not
asking for more than the constitution entitles them to;
it may decide that their request has exceeded their
rights, deny the relief requested but allow amendment
of their proposal to bring it into conformity with their
rights; or if the record is inadequate it may take evi-
dence or remand the record to the Board of Super-
visors for this purpose. There are, we believe, only
two limitations on the court's powers. First, the

---

[3] Such definitive limitations are lawful. *Philadelphia v. An-
gelone,* 3 Pa. Commonwealth Ct. 119, 280 A.2d 672 (1971).

354

Carrs are entitled to definitive relief without regard to the township's amendatory ordinance allowing for 50% expansion; and second, however the matter proceeds, the court below must retain jurisdiction in order that the appellants' right naturally to expand their nonconforming use consistent with the public welfare, safety and health may be protected. We therefore

### ORDER

AND Now, this 27th day of May, 1977, the order of the Court of Common Pleas of Bucks County, made December 24, 1975, dismissing the appellants' appeal is reversed and the record is remanded to the court below for further action not inconsistent with this opinion.