Bronia Sultanik, Appellant *v.* Board of Supervisors of Worcester Township and Worcester Township, Appellees.

Argued December 11, 1984, before President Judge CRUMLISH, JR. and Judges ROGERS, WILLIAMS, JR., CRAIG, MacPHAIL, DOYLE and BARRY.

*Jules Pearlstine*, with him, *Jeffrey T. Sultanik* and *Frank W. Jenkins, Pearlstine, Salkin, Hardiman and Robinson,* for appellant.

*Robert S. Ryan, Drinker, Biddle & Reath,* with him, *Melvyn J. Tarnopol* and *Joseph M. Manko, Wolf, Block, Schorr and Solis-Cohen,* and *Philip R. Detwiler, Philip R. Detwiler & Associates, P.C.,* for appellees.

OPINION BY JUDGE CRAIG, March 13, 1985:

This zoning appeal involves claims that a zoning ordinance unlawfully excludes twin-home residences and shopping centers. Initially, however, the case presents a question of due process in curative amendment proceedings:

In view of the rule which invalidates a local zoning board decision when the functions of the municipality's adversary counsel and adjudicative counsel are commingled in the person of one attorney, is a local curative amendment decision also invalid when such adversary and adjudicative attorneys are different individuals but from the same law firm, throughout most of the proceedings?

Another question, relating to relief, is the following:

What is the court's role where the municipal governing body has acknowledged that its own ordinance *is* exclusionary and, as relief to the landowner, would allow the requested residential use, but at reduced density and on a minor fraction of the tract?

### History of the Case

Owner Bronia Sultanik filed curative amendment proceedings under the Pennsylvania Municipalities Planning Code (MPC)[1] with Worcester Township, Montgomery County, concerning a 204.5 acre tract on Morris Road, zoned AGR-Agricultural. The proposal called for (1) 1,022 dwelling units in twin-home residences on 192.5 of the acres, at a density of 5.3 units per acre, and (2) a related shopping center of 82,900 square feet on the remaining 12 acres. The landowner claimed that the township's ordinance unlawfully excluded twin homes and shopping centers.

---

[1] Act of July 31, 1968, P.L. 805, *as amended*, §§609.1, 1004, 53 P.S. §§10609.1, 11004.

The proceedings before the Board of Supervisors, the township governing body, filed in December, 1977, did not conclude until October, 1981, partly because of intervening litigation; however, the board's curative amendment hearings stretched over more than 33 months, in part because the supervisors limited the conducting of hearings to not more than two hours per month.

After the first hearing, in which Township Solicitor Philip Detweiler stated that he would present the township's case and also advise the board, Attorney Joseph Manko thereafter appeared to prosecute the township's adversary position in opposition to the landowner's challenge, while a member of his law firm, Franklin Spitzer, and later another member of the same law firm, Robert Boote, conducted the hearings and ruled upon objections to the evidence offered by their own partner as well as by the landowner's attorney, as shown by numerous specific rulings in the record.[2] Only at the last (thirty-third) hearing did the township replace Mr. Boote of Mr. Manko's law firm with another attorney, Robert Ryan, from a different law firm.

The board has agreed that its ordinance was exclusionary in failing to make any provision for twin homes, but considers it not exclusionary with respect to commercial shopping centers because the zoning map describes commercial zones and some commercial use exists. The board, by its order, offered relief of its own devising to the landowner, allowing twin-home development on 75 of the 192 acres proposed for that

---

[2] In the Supplemental Reproduced Record: 45b, 75b-76b, 85b, 86b, 88b, 96b, 99b, 103b-109b, 112b-114b, 137b-138b, 150b-151b, 154b-155b, 175b-176b, 178b, 184b, 189b, 205b-207b. Original record: T. Feb. 20, 1980, pp. 76, 77; T. Mar. 27, 1980, pp. 81, 82; T. May 29, 1980, pp. 55-57.

use, at a density of 2.5 units per acre instead of 5.3 units. Thus the board authorized the requested residential use, but would limit it to about 19% of the proposed number of units, on not more than 39% of the proposed residential site area.

The owner appealed to the Montgomery County Court of Common Pleas, raising questions concerning the residential relief tendered, the alleged exclusion of shopping centers, and alleged irregularities in the township's mode of conducting the curative amendment proceedings. The court, without taking additional evidence, approved the township's residential relief order on the basis of the local board's findings, concluded that no shopping center exclusion had been established, and decided that the township's employment of one law firm for both the township's opposition to the challenger and for the board, during most of the proceedings, was "almost improper" but not fatal because not shown to be harmful or prejudicial. Hence, the trial court dismissed the appeal.

On appeal here, the issue as to the fairness of the township's procedure—fully preserved for this court —is a question which logically comes first.

### Procedural Due Process—The Fairness of the Proceedings

At the outset, we must acknowledge that, in the curative amendment procedure added to the MPC in 1972,[3] we have an unusual—if not anomalous—approach which designates the municipal legislative body as an adjudicative tribunal empowered to consider and decide, in the first instance, the validity of its own municipal legislation—the zoning ordinance enacted or amended by that same body or its predecessors.

---

[3] By Act of June 1, 1972, P.L. 333, §§609.1, 1004.

Although a challenging landowner has an option to take his validity attack instead to the zoning hearing board,[4] which is a different body (albeit composed of members appointed by the governing body), there is no doubt that, if the landowner elects to go before the governing body, that body must nevertheless proceed fairly when acting under the MPC in its quasi-adjudicative role. All municipal adjudicative bodies must avoid unnecessary conflicts and commingling of incompatible functions whenever possible. *See Gardner v. Repasky,* 434 Pa. 126, 252 A.2d 704 (1969) (one of the officials who initiated civil service disciplinary proceeding also sitting as a member of a civil service commission; civil service action reversed, not remanded). In *Donnon v. Downingtown Civil Service Commission,* 3 Pa. Commonwealth Ct. 366, 283 A.2d 92 (1971), this court reversed and remanded a civil service commission decision where a borough solicitor had assisted in initiating the charges and then functioned as legal adviser to the commission.

Of course, the landowner here does not attack the township board's conclusion that the zoning ordinance was exclusionary with respect to the residential twin-homes proposal. Both parties understandably continue to agree on that point because, as a matter of law, the township's zoning ordinance on its face makes clear that, aside from single-family dwellings, only multiple dwellings—defined as involving three or more units—are allowed, thus making no provision for the twin homes requested.[5]

---

[4] MPC §1004, 53 P.S. §11004.

[5] An opinion of three of the seven Justices of the Pennsylvania Supreme Court has stated that a municipality need not provide for every subcategory of multi-family dwellings. *Appeal of Elocin, Inc.,* 501 Pa. 348, 461 A.2d 771 (1983) (one Justice concurring only in the result; three Justices dissenting). That plurality opinion cited the plurality opinion of the same three Justices in *Appeal of M. A.*

However, as to the relief tendered with respect to the residential exclusion, and the refusal to conclude that the ordinance was exclusionary with respect to provision for shopping centers, the landowner claims that the decision is void on a commingling ground.[6]

*Kravitz, Inc.*, 501 Pa. 200, 460 A.2d 1075 (1983), for the same proposition, but the point may have been a dictum in *Kravitz* because the opinion there also regarded the zoning ordinance as *not* prohibiting the allegedly excluded residential category—townhouses.

Here the township has not sought to defend its ordinance by reference to the foregoing plurality opinions.

[6] The landowner also presses a secondary procedural complaint concerning the insistence by the board of supervisors that the curative amendment proceedings be limited, in each calendar month, to just one hearing of not more than two hours' duration. Although the quantity of evidence presented by the landowner was undoubtedly a factor, the township's time limitation contributed substantially to the fact that these curative amendments proceedings involved 33 hearing sessions, extended over more than three years.

To be sure, members of municipal governing bodies, usually with modest remuneration, must devote long hours to performing their local legislative and administrative functions, within the hours left to them after they have attended to the responsibilities for their regular careers.

Therefore, the Worcester Township Board of Supervisors understandably may have desired to control the time devoted to this additional chore. However, when such a limitation contributes to extending a proceeding over a period of years, the courts cannot confer a blanket approval. Obviously, the legislature has provided for quasi-judicial proceedings in order to expedite the resolution of disputes, lest they be unduly delayed if left solely to processing in the courts.

Such a protracted process, resulting from a continuing refusal to sit for greater periods, was unreasonable. We cannot approve an approach which, however well-intended here, could be abused by municipalities—if we gave it our blessing—to confront landowners with a serious time barrier whenever they sought to pursue the remedy afforded by the MPC. Because mandamus is available as a judicial remedy to require that a tribunal perform its nondiscretionary duty to afford a hearing, *O'Peil v. State Civil Service Commission*, 13 Pa. Commonwealth Ct. 470, 320 A.2d 461 (1974), mandamus would be available to question municipal delay en route, thus avoiding any necessity to wait until the end of the protracted period.

The facts concerning the commingling issue are apparent on the record. When the township hired Mr. Manko as "special environmental counsel" to represent the township's adversary position against the landowners' claims, the township's board of supervisors also hired, for their adjudicative function as the hearing tribunal in the curative amendment proceedings, Attorney Spitzer from Mr. Manko's law firm. As late as the fourth session, the board chairman identified Messrs. Manko and Spitzer together as "consulting attorneys for the township." Later, the township labeled Mr. Spitzer as "parliamentarian" for the board as hearing tribunal. Nearer the end of the proceedings, the township replaced Mr. Spitzer with Mr. Boote, also a member of the same law firm as that of Mr. Manko, adversary counsel for the township.

The title of "parliamentarian" is, of course, foreign to adjudicative proceedings and does not fairly describe what the record shows to have been the functions of Messrs. Spitzer and Boote in this case. As illustrated by the record pages listed as examples in n.2 above, and at numerous other places in the record, they functioned as legal counsel to the township board of supervisors sitting in its adjudicative role. The record shows each of them conducting the hearings as a hearing examiner or administrative law judge would —presiding and ruling on objections from both sides as to evidence, in many instances excluding testimony offered on behalf of the landowner to which their partner objected. Although, as the township's brief contends, they may not have excluded any *documentary* evidence, there is no doubt that they functioned to control the admission of testimony. At one point (189b) Mr. Boote answered for a witness and, upon the landowner's objection, directed counsel to proceed to the

next question, characterizing the landowner's line of inquiry as "senseless."

The landowner maintained a continuing objection to the township's employment of adjudicative counsel from the same law firm as its adversarial counsel.

Not until the thirty-third and final hearing did the township replace Mr. Boote with a lawyer who was not a member of the same law firm as the township's adversary counsel. That final adjudicative counsel has continued as counsel for the township's position on the brief before us, along with Mr. Manko.

In ruling on the matter of commingling, the trial judge regarded the final replacement as significant, considering it "a positive step" for the board finally to bring in an attorney not affiliated with adversary counsel.

The township here contends that there was nothing wrong in having attorneys from the same law firm present the township's case against the landowner's claim and also serve as counsel to the hearing tribunal because an unaffiliated legal counsel came into the picture, at the end, to advise the board members with regard to their decision.

Of course, the premise that the decision-making tribunal was not involved in any decision-making during thirty-two hearings, but only began to think about a decision in the thirty-third hearing and thereafter, is unrealistic. The quasi-adjudicative functions of the board of supervisors obviously embraced the entire process.

The trial judge's opinion, in succinctly summarizing the situation, reflects the troubling aura presented by the board's approach. The trial judge stated:

Under the circumstances in this case, although it may be said to be undesirable and almost

improper, for one attorney to represent a party in a case where another attorney from the same office advises the Board, there does not appear to be any harm or prejudice which would amount to grounds for reversal.

The controlling principle, however, when there is a lawyer conflict in a local zoning adjudicative procedure, is that a showing of harm or prejudice is *not* required. In *Horn v. Township of Hilltown,* 461 Pa. 745, 337 A.2d 858 (1975), where the same solicitor represented a township's adversary position and also conducted the meeting and ruled on all objections to evidence, the Pennsylvania Supreme Court condemned the result regardless of harm, stating:

While no prejudice has been shown by this conflict of interest, it is our opinion that such a procedure is susceptible to prejudice, and, therefore, must be prohibited.

461 Pa. at 748, 337 A.2d at 860.

The problem of conflict is the same whether the situation involves two members of the same law firm or a single lawyer. Because Mr. Manko, as advocate for the township, was barred by *Horn* from serving the adjudicative board, his firm's member, Mr. Spitzer, was equally barred. The Supreme Court holds that, when one attorney is barred from serving a certain client, "all members of the firm to which the attorney belongs" are barred likewise. *American Dredging Co. v. Philadelphia,* 480 Pa. 177, 184, 389 A. 2d 568, 572 (1978).

With emphasis, the Supreme Court in *Horn* quoted from *Gardner,* reiterating that

*any tribunal permitted by law to try cases and controversies must not only be unbiased but must avoid even the appearance of bias.* (Emphasis in *Horn.*)

The township seeks to rely on decisions of this court involving two attorneys from the same branch of a state governmental agency, *Bryan v. Pennsylvania Human Relations Commission,* 45 Pa. Commonwealth Ct. 125, 404 A.2d 1368 (1979) (state lawyer prosecuting and state lawyer advising the hearing panel, both associated with the same branch of the agency; upheld because no evidence of actual bias); *Tighe v. State Board of Nurse Examiners,* 40 Pa. Commonwealth Ct. 367, 397 A.2d 1261 (1979) (assistant attorney general acting as prosecutor and two others, at different periods, assisting in the conduct of the hearing; actual prejudice required and none shown).

However, realistic factors distinguish the principle that actual prejudice is required to invalidate the result when state attorneys from the same agency have served as prosecutor and tribunal adviser, as contrasted with the Supreme Court's *Horn* principle that the result is invalid without a showing of actual bias when the functions of zoning advocate for the municipality and adviser to its decision-making tribunal are commingled. When a public agency, such as the state, draws all its legal services from employed staff, practical considerations can justify an actual prejudice rule. Such considerations are not present when a township, retaining outside counsel for one purpose, is free to obtain wholly independent counsel for a conflicting purpose.

Because there is no real need to have attorneys from the same outside law firm serve in both adversary and adjudicative roles, municipalities should not thus unnecessarily confront the courts with the responsibility of probing for actual prejudice when beclouding conflicts can easily be avoided. And the need to avoid even the appearance of bias is maximized

when the adjudicative tribunal is not an independent one by virtue of its antecedent legislative function.

Finally, as noted above, when a commingling of functions establishes a situation of conflict during most of the proceedings *while the all-important record is being made,* turning to the employment of independent counsel during the post-hearing deliberations cannot cure the conflict.

The conclusion here reached, that the factual proceedings were invalid under *Horn* because of the commingling of functions, does not require us to disturb the township's acknowledgment that the ordinance was exclusionary with respect to twin homes. Yet there remains for final resolution (1) the question of the nature of relief available for that residential exclusion, and (2) the question of whether or not the township zoning ordinance, in making some provision for commercial uses, has allowed a fair share of the proposed commercial use, neighborhood shopping center.

### Relief for Residential Exclusion

To resolve the landowner's plea for judicial relief, the courts must take MPC §1011(2), 53 P.S. §11011(2), as the starting point. Contrary to the landowner's contention, this court did not hold that subsection to be unconstitutional in *Hopewell Township Board of Supervisors v. Golla,* 58 Pa. Commonwealth Ct. 572, 428 A.2d 701 (1980) *modified,* 499 Pa. 246, 452 A.2d 1337; this court's opinion explicitly disclaimed any ruling with respect to that subsection. 58 Pa. Commonwealth Ct. at 585-6, 428 A.2d at 707.

Section 1011(2) provides that if the court finds that a zoning ordinance unlawfully restricts a proposed development, the court

> may order the described development or use approved as to all elements or it may order it ap-

> proved as to some elements and refer other elements to the governing body ... having jurisdiction . . . including the adoption of alternative restrictions, in accordance with the court's opinion and order. . . .

The subsection further provides that, in issuing such an order, the *court* shall consider:

> (i) the locational suitability of the site in relation to community facilities and any comprehensive plan which may exist;

> (ii) the impact of the proposal on housing needs, transportation and other public facilities;

> (iii) the suitability of the site in relation to its natural features;

> (iv) the environmental impact of the proposed use; and

> (v) its impact on agriculture and other essential land uses.

The MPC empowers the court to hold a hearing to receive evidence, including expert evidence which the court may obtain "to aid the court to frame an appropriate order." The subsection concludes by stating that the court "shall retain jurisdiction" enabling it to issue supplementary orders as necessary to protect the landowner's rights.

Since the legislature adopted that revision of the relief provisions in 1978,[7] this court has had only a few occasions to apply the subsection. In every such case, however, this court perceived the trial court as having the central role. In *Appeal of Elocin, Inc.*, 66 Pa. Commonwealth Ct. 28, 443 A.2d 1333 (1982), *rev'd on other grounds*, 501 Pa. 348, 461 A.2d 771 (1983), a

---

[7] Act of October 5, 1978, P.L. 1067. §6.

remand to the trial court, for consideration of the various factors by it, was the course ordered. In *Borough Council of Churchill Borough v. Pagal, Inc.,* 74 Pa. Commonwealth Ct. 601, 460 A.2d 1214 (1983), we read section 1011(2) as providing for court review of the proposed plan, existing restrictions and locational suitability of the site.

Similarly, in *Lower Southampton Township Board of Supervisors v. Schurr,* 72 Pa. Commonwealth Ct. 322, 456 A.2d 702 (1983), we remanded for relief under section 1011(2), observing the importance of the retention of jurisdiction by the trial court to insure that the requested land development would not be prevented for reasons of retribution.

In *Application of Friday,* 33 Pa. Commonwealth Ct. 256, 261, 381 A.2d 504, 507 (1978), we agreed that site suitability "is an appropriate consideration going to the type of relief, if any, that should be given to a landowner after he has successfully challenged an ordinance. . . ." However, as noted above, section 1011(2) places the site suitability evaluation primarily in the hands of the trial court and under its control.

Before section 1011(2) received its present content, this court stated in *Ellick v. Board of Supervisors of Worcester Township,* 17 Pa. Commonwealth Ct. 404, 411-12, 333 A.2d 239, 244 (1975), that

> if a governing body determines that its ordinance is defective, because it totally prohibits the use proposed by the challenging landowner, then the governing body must permit the challenging landowner to develop his land as proposed in the "plans and other materials" submitted with the challenge, provided, of course, that what is submitted is reasonable, and not injurious to the public health, safety, welfare and morals.

Superimposed upon those concepts we now have the stronger role conferred upon the courts by the 1978 revision of MPC §1011(2). Moreover, in *Ellick* we also noted the courts must grant definitive relief, recognizing that MPC §1011, even in its pre-1978 form, gave the court a wide power of review over the plans submitted.

In *Snyder v. Railroad Borough,* 59 Pa. Commonwealth Ct. 385, 430 A.2d 339 (1981), we remanded for relief with reference only to the *Ellick* guidelines, but because the landowner made no claim upon the relief provisions of MPC §1011(2).

Undoubtedly, MPC §1011(2) assumes that the municipality will not often acknowledge its ordinance's exclusionary invalidity; hence the section contemplates that the court will normally be affording relief after the court has concluded that the ordinance is invalid. However, no one contends that a municipality, by admitting the invalidity of its ordinance, could thereby assume complete control over the relief to be afforded, to the exclusion of the courts. Certainly, the courts have not permitted local governing bodies, when facing an effective curative amendment challenge, to dispose conclusively of the challenge by amending the zoning ordinance after the landowner has filed the curative amendment request. This court so held in *Carr Appeal,* 30 Pa. Commonwealth Ct. 342, 374 A.2d 735 (1977), citing the Supreme Court statement from *Casey v. Zoning Hearing Board of Warwick Township,* 459 Pa. 219, 229, 328 A.2d 464, 469 (1974), that:

> [W]e cannot allow a municipality to thwart a valid challenge to its zoning ordinance by adopting a curative provision, which was not [pending] prior to the time of the challenger's application.

In this case, the township's proffer of relief, to the extent of just 39% of the area and 19% of the number of units requested, is not literally a zoning ordinance amendment thus forbidden in *Casey*. However, it would have precisely the same result as an amendment if it were accorded conclusive legal effect.

Clearly, whenever a municipality deems its own ordinance to be invalid in relation to a landowner's challenge, there is nothing wrong in the municipality offering a measure of relief. If the landowner accepts, all is well. However, the municipality's relief proposal cannot be regarded as unassailable. Nor should the local "findings" be accorded their usual administrative weight (upheld if supported by substantial evidence and not arbitrary or capricious) when the MPC's emphasis upon the court's role, where the landowner must seek judicial aid, clearly indicates that the court is to examine the matter of relief de novo.

Moreover, here the township's relief proposal is based upon proceedings conducted invalidly, as noted above, in the light of *Horn v. Hilltown Township*.

Hence, the limited relief proposed by the township cannot stand as conclusive. The design of relief should be primarily under the control of the trial court, as in *Snyder,* where, finding the total program proposed by the developer to be overbroad, we remanded the case to the trial court with a direction that the trial court review the proposal. Moreover, in *Borough of Youngsville v. Zoning Hearing Board,* 69 Pa. Commonwealth Ct. 282, 450 A.2d 1086 (1982), where we feared that a remand to the municipality itself could unduly delay resolution of the matter, we ordered that the trial court conduct a hearing and take evidence on the particular zoning issue there involved.

Therefore, the relief here must be governed by the provisions of MPC §1011(2) which call for a remand to the trial court, with a direction that the trial court take further evidence on the question of relief if the landowner satisfies the trial court that there is further evidence which may have been excluded as a result of the manner in which most of the township's hearings were conducted.

Whether or not the trial court receives additional evidence itself, considering the power which the MPC provides for the trial court to obtain expert assistance, the trial court must first make the initial determinations with respect to site location, site suitability, environmental impact and other factors described in section 1011(2). The trial court must reach its findings and conclusions on the basis of a record. To avoid the necessity of retrying this matter from the start, there is no reason why the trial court cannot regard the record of testimony and exhibits submitted to the township as if that record constituted a set of depositions.

The present trial court opinion appears to accept the findings of the township board of supervisors without considering whether or not substantial evidence supported those findings. *Benham v. Middletown Township Board of Supervisors,* 22 Pa. Commonwealth Ct. 245, 249, 349 A.2d 484, 486-87 (1975). However, for the reasons stated above, those findings are not entitled to any weight in the court's determinations hereafter under section 1011(2).

## Exclusion of Commercial Shopping Centers

The Worcester Township Zoning Ordinance, in Article XI, provides for retail sales uses under the C-Commercial District category. The zoning map shows several areas in the township zoned as C-Commercial.

Commercial development, according to the landowner's contentions and evidence, occupies about 1.2% of the township's total area.

The landowner argues that, because the zoning ordinance does not describe a commercial "shopping center" as a discrete use, the zoning regulations thus display, on their face, a total exclusion of retail shopping centers. However, because a shopping center constitutes simply a particular configuration of commercial uses, rather than a separate land use category in itself, there is no basis for concluding, as a matter of law, that there is a total exclusion of a legitimate commercial use category.

Of course, even if there is no total exclusion, there can be a de facto exclusion of commercial use. *Hammermill Paper Co. v. Greene Township*, 39 Pa. Commonwealth Ct. 212, 395 A.2d 618 (1978). *Sullivan v. Board of Supervisors of Lower Makefield Township*, 22 Pa. Commonwealth Ct. 318, 348 A.2d 464 (1975). *Sullivan* involved an attack upon a zoning ordinance as de facto exclusionary with respect to commercial uses. In that case, Makefield Township had zoned just about 1% of its total area for commercial development, under the classifications of C-2 Commercial-Highway and C-1 Commercial-Neighborhood Shopping, with the latter category requiring a minimum lot size of ten acres for commercial development.

This court concluded that those circumstances did not constitute a total exclusion of commercial use, nor did they, without more, establish that the provision for commercial development was illusory and therefore unlawfully exclusionary.

The attacking landowners there had to bear the burden of proving that the zoning ordinance did not provide for that township's "fair share" of commercial development. Our decision held that merely point-

ing out that a relatively small area was zoned for commercial use, without proof that the needs of a community's residents are not being adequately served, was not sufficient. We noted the lack of evidence indicating projected population growth and the absence of any proved connection between population and the need for commercial services.

In contrast, in the present record here, the landowner, through expert testimony, did offer demographic data and information on population growth and the nature and location of existing shopping centers, as well as economic factors relating to the need for retail facilities.

In view of the conclusion above reached as to the invalidity of the township's approach to reaching its decision, which rejected the commercial exclusion attack on the basis that the township's provision for commercial uses was adequate, and in view of the trial court's affirmance of that conclusion by reliance upon the township's findings, a remand for trial court consideration is necessary.

Assuming that the landowner desires to pursue the commercial use exclusion issue, our disposition of the case will have to provide an opportunity for doing so, free of the previous defects in the proceedings.

## Order

Now, March 13, 1985, the order of the Court of Common Pleas of Montgomery County, dated July 14, 1982, is vacated and this case is remanded to that court for the following proceedings:

1. To make the mandatory finding required by section 1011(4) of the Pennsylvania Municipalities Planning Code (MPC) which requires, as a prerequisite to any relief, an affirmative finding of fact that the landowner's certification required by MPC §1004-(2)(a) was in fact made and is true and correct;

2. If the appellant elects to proceed further to establish that the zoning ordinance of Worcester Township is de facto exclusionary with respect to commercial retail use, to determine upon the present record, supplemented by receiving additional evidence if the trial court deems it proper, whether such unlawful exclusion exists, and, if so, to proceed with respect to relief under MPC §1011(2);

3. To proceed under MPC §1011(2) to implement relief for the exclusionary effect of the Worcester Township zoning ordinance with respect to the residential development proposed, on the basis of the present record, supplemented by such additional evidence as the trial court determines to be proper; and

4. To retain jurisdiction if the trial court, after exercising its functions and considering the factors listed in MPC §1011(2), refers any elements of the proposed development to the township for further proceedings, such as the adoption of alternative restrictions in accordance with the trial court's opinion and order.

Judge WILLIAMS, JR., did not participate in the decision in this case.