547 A.2d 833

Edward Weiner, Appellant *v.* Board of Supervisors of Lower Macungie Township, Lehigh County, Pennsylvania et al., Appellees.

Argued June 13, 1988, before Judge MacPhail, and Senior Judges Barbieri and Kalish, sitting as a panel of three.

*Edmund G. Hauff, Hauff & Turczyn,* for appellant.

*Peter S. Steinberger,* with him, *Blake C. Marles, Weaver, Mosebach, Piosa, Hixson, Wallitsch & Marles,* for appellees.

OPINION BY JUDGE MacPHAIL, September 16, 1988:

Dr. Edward Weiner (Appellant) appeals an order of the Lehigh County Court of Common Pleas which affirmed a decision of the Board of Supervisors of Lower Macungie Township (Supervisors) rejecting Appellant's challenge and curative amendments to the Zoning Ordinance of Lower Macungie Township. We affirm.

Appellant owns a 16.4412-acre tract of land located at the intersection of Brookside Road and Lower Macungie Road in Lower Macungie Township, Lehigh County. The tract is zoned LE-3, Living Environment-

Suburban District, pursuant to the Zoning Ordinance. Uses permitted as of right in this district under Section 602 of the Zoning Ordinance, include agricultural uses, single family detached dwellings, and planned residential developments.

On October 29, 1985, Appellant submitted a petition to the Supervisors by which he challenged the Zoning Ordinance and proposed two curative amendments to permit the construction of a two-story, 102,490 square foot commercial building containing retail shops and office space on his property. The curative amendments proposed by appellant would 1) rezone his property to CC, Commerce Center District, and 2) provide for certain uses as of right in the CC District.

Hearings on Appellant's challenge coupled with curative amendments were held before the Supervisors on January 8, 1986, January 22, 1986, March 12, 1986, and April 16, 1986. The Supervisors, without making findings of fact or conclusions of law, denied Appellant's curative amendment to permit certain uses as of right in the CC District. Appellant appealed the Supervisors' decision to the common pleas court. The trial court, without taking additional testimony, made its own findings of fact and conclusions of law and affirmed the Supervisors' decision. Appellant's appeal of this order is now before us for disposition.

Appellant's initial argument on appeal is that the trial court erred in upholding the validity of the Zoning Ordinance because, as Appellant claims, it is *de facto* exclusionary with regard to commercial uses. We note that a zoning ordinance is normally presumed valid and the burden of proving otherwise is on the challenging party. *Miller & Son Paving, Inc. v. Wrightstown Township*, 499 Pa. 80, 451 A.2d 1002 (1982).

Even where, as here, there is no total exclusion of commercial uses by a zoning ordinance, there can be a

*de facto* exclusion of such use. *Sultanik v. Board of Supervisors of Worcester Township,* 88 Pa. Commonwealth Ct. 214, 488 A.2d 1197 (1985). A *de facto* exclusion is established where an ordinance permits a use on its face, but when applied acts to prohibit the use throughout the municipality. *Hersh v. Zoning Hearing Board of Marlborough Township,* 90 Pa. Commonwealth Ct. 15, 493 A.2d 807 (1985).

In a case involving an ordinance challenge based on a *de facto* exclusion of multi-family dwellings, our Supreme Court formulated the "fair share" test to determine whether local zoning schemes "reflect a balanced and weighted consideration of the many factors which bear upon local and regional housing needs and development." *Surrick v. Zoning Hearing Board of Upper Providence,* 476 Pa. 182, 191, 382 A.2d 105, 110 (1977). The fair share test focuses on three factors: 1) whether the community is a logical area for development and population growth; 2) the present level of development within the particular community, including population density data and the percentage of total undeveloped land and the percentage available for the development of the allegedly-excluded use; and 3) the exclusionary impact of the ordinance. This analysis has been utilized in controversies over commercial uses, but as our Court has cautioned:

> We recognize that commercial development and housing development bear a definite relationship to one another, but, in determining the 'fair share' of growth on a case-by-case basis, we must consider that a municipality may have valid reasons for regulating commercial growth which might not suffice if those same reasons were advanced in support of a single-family dwelling restriction or a residential minimum lot size.

*Sullivan v. Board of Supervisors of Lower Makefield Township,* 22 Pa. Commonwealth Ct. 318, 323-324, 348

A.2d 464, 467 (1975). In the case before us, the trial court found that the Zoning Ordinance did not have the effect of excluding commercial uses and otherwise survived scrutiny under the fair share analysis. We agree.

Appellant presented expert evidence before the Supervisors concerning the population in Lower Macungie Township and projected growth rates, the land available for commercial uses, and the relationship between population statistics and the commercial services and uses existing in the Township. According to the testimony of one witness, the Township's total acreage of approximately 15,820.4 acres encompasses 675.94 acres that are presently zoned for commercial uses. Notes of Testimony (N.T.) from January 8, 1986 at 24, Reproduced Record (R.R.) at 34a. Of these 675.94 acres, Appellant claims that 490.6 acres are unavailable for commercial development because such land is presently owned by large industrial concerns, is for existing or future cemetery use, has inadequate frontage or lot size, or is located in a flood plain area. N.T. at 22-24, R.R. at 32a-34a. Therefore, Appellant argues, only 185.3 acres, approximately 1.2% of the land within the Township, are zoned and available for commerical uses. N.T. at 25, R.R. at 35a.

Demographic evidence presented to the Supervisors by Appellant's witness represented that the Township experienced a 332% increase in population between 1950 and 1980, ten times the growth rate of the region consisting of Lehigh and Northampton Counties. N.T. at 50, R.R. at 60a. The testimony also indicated that the Township had the highest median income of any municipality in Lehigh County in 1979, and that this figure was 36% higher than the average of Lehigh and Northampton Counties. N.T. at 54, R.R. at 64a. Despite this income level, however, the Township had below average

retail sales per person. Also, the commercial growth rate in the Township of 1,201 square feet per person in the years 1970 through 1980 was less than the rate in the Lehigh-Northampton County region and the municipalities comparable to the Township. N.T. at 61-62, R.R. at 71a-72a; Exhibit P-20 at 9. Appellant's expert summarized that assuming a projected population increase of 10,000 persons, and 1,200 square feet of commercial space per person, the Township will need 275 acres of land zoned for commercial purposes. N.T. at 66, R.R. at 76a; Exhibit P-20 at 10. Accordingly, considering the 185 acres Appellant considers available for commercial development in the Township, there is a deficit of 90 acres.

We reject Appellant's argument that the trial court erred in finding that the evidence presented did not satisfy the *Surrick*, fair share anaylsis. As correctly noted by the trial court, the fair share test is "intended to foster regional growth by requiring communities located on the fringes of the metropolitan areas to absorb the 'increased responsibility' and 'economic burdens' which time and natural growth invariably bring." *Fernley v. Board of Supervisors of Schuylkill Township,* 509 Pa. 413, 418-419, 502 A.2d 585, 588 (1985) (citing *Hammermill Paper Co. v. Greene Township,* 39 Pa. Commonwealth Ct. 212, 219, 395 A.2d 618, 621 (1978)). Appellant has not established that the 1.2% of Township acreage that is zoned commercial cannot accommodate the Township's "economic burden," despite his claim that the Township has a projected 90-acre deficit in commercial property.

With regard to Appellant's argument that there will be a deficit of land zoned for commercial purposes in the Township, the trial court points out that a planning consultant testified before the Supervisors that, based on a different study, there was actually a *surplus* of

commercial property in the Township. According to this testimony, the projected population increase of the Township is only 4,200. N.T. from April 16, 1986 at 55, R.R. at 424a. This evidence indicated that 93 acres of commercial property are needed to accommodate this population growth; applying Appellant's own figure of 185 acres currently available, there is a surplus of 68 acres of land zoned for commercial uses. *Id.* at 56, R.R. at 425a. The trial court concluded that the latter testimony, based on 1986 data, was more reliable, and we will not question that judgment. The trial court further pointed out that the Appellant's claim that there were only 185 acres available for commercial development was inaccurate. The court chose to rely upon data which suggested that there were 379 acres available, and utilizing this figure, the court concluded that there was a surplus of 136.4 acres.

Appellant's second argument is that the Zoning Ordinance is exclusionary because the only commercial uses it permits as of right are crop farming and tilling of soil. All other commercial uses in the CC district are conditional, requiring a recommendation of the Township Planning Commission and the approval of the Supervisors. Appellant concedes that the conditional use procedure is valid and appropriate on occasion, but being required for every commercial use is indicative of an "exclusionary policy and effect." *See* Appellant's Brief at 31. We cannot agree.

The Chairman of the Township Planning Commission testified before the Supervisors that in the five-year period prior to that time, fifty-two conditional use applications, in all districts including CC, had been submitted. Of this amount, two applications had been rejected. N.T. from March 12, 1986 at 56, R.R. at 258a. Appellant maintains that this testimony does not reveal what "chilling effect" the conditional use process has on

commercial development in the Township. Regardless of the effect of the procedure, however, we agree with the trial court that it is *Appellant's* burden to prove that the Zoning Ordinance is exclusionary, not the Township's burden to prove the opposite. Further, this Court has held that "a zoning ordinance may be held to satisfy the municipality's fair share of a required use by making the use available by conditional use or special exception." *New Bethlehem Borough Council v. McVay,* 78 Pa. Commonwealth Ct. 167, 176, 467 A.2d 395, 399 (1983). While we recognize that provision for a particular use must not amount to mere tokenism, *id.,* we do not believe the Township's conditional use procedure for commercial uses is exclusionary.

Appellant's final argument concerns alleged procedural defects in the proceedings before the Supervisors. Specifically, Appellant contends that the Township Solicitor inappropriately acted in both an adjudicative role and an adversarial role; that the Planning Commission appeared before the Supervisors to defend the Zoning Ordinance; and that one Supervisor failed to disqualify herself from the proceedings even though she had objected previously to commercial development on what is now Appellant's property in a prior proceeding.

This Court has recognized that muncipal ajudicative bodies must avoid unnecessary conflicts and commingling of incompatible functions whenever possible. *Sultanik v. Board of Supervisors of Worcester Township,* 88 Pa. Commonwealth Ct. 214, 488 A.2d 1197 (1985). In *Sultanik,* the attorney representing the township's adversarial position against the land owner, and the attorney acting in an adjudicative position with the board of supervisors, were members of the same law firm. We concluded that the factual proceedings before the board of supervisors in the landowner's curative amendment request were invalid because of this com-

mingling of functions. Our Court in *Sultanik* noted further that "when there is a lawyer conflict in a local zoning adjudicative procedure . . . a showing of harm or prejudice is *not* required." *Id.* at 223, 488 A.2d at 1202 (emphasis in original).

In the case at bar, Appellant claims that the Township Solicitor represented conflicting interests because he ruled on evidence and objections of counsel, and acted in an adversarial position in cross-examining Appellant's witnesses and requesting evidence of the Township Engineer. Our review of the record of the proceedings before the Supervisors assures us that there was no improper commingling of the Solicitor's functions. The two instances in the record to which Appellant points as examples of the "cross examination" conducted by the Solicitor are merely situations where the Solicitor questioned witnesses to elicit additional facts to clarify the record. *See* N.T. from January 8, 1986 at 39-41 and 100-101, R.R. at 49a-51a and 110a-111a. There is nothing more adversarial in the exchanges than questions posed by any trial judge or finder of fact.[1]

With regard to Appellant's claim that the Planning Commission improperly appeared before the Supervisors to defend the Zoning Ordinance, we note that this Court has condoned the participation of such bodies as litigants in zoning proceedings. *See Appeal of Stagebrush Promotions, Inc.*, 98 Pa. Commonwealth Ct. 634,

---

[1] We note further, as our Supreme Court has recently recognized, that it is primarily in a fact-finding situation where the possibility of prejudice resulting from the commingling of functions is most dangerous. *See Horsley v. Philadelphia Board of Pensions and Retirement*, Pa. , A.2d (No. 73 E.D. Appeal Docket 1987, filed August 17, 1988). Here, the trial court was the fact-finder, not the body before which the commingling was alleged to have occurred.

512 A.2d 776 (1986), *petition for allowance of appeal denied* January 12, 1987 at 748 E.D. Allocatur Docket 1986. Appellant also objects to a legal memorandum, prepared by an unnamed attorney, which was relied upon by the Planning Commission in recommending to the Supervisors that Appellant's curative amendments be denied. *See* Exhibit P-24, R.R. at 853a-854a. We fail to comprehend how this legal advice submitted to the Planning Commission was improper, even though, according to Appellant, the author of the memorandum was not an employee of the Township and was not present when Appellant appeared before the Planning Commission. The two-page document, entitled "Notes from Planning Commission, Curative Amendment for Dr. Edward Weiner," is an explanation of the legal issue involved and not testimony which Appellant had a right to cross-examine.

Finally, we reject Appellant's argument that the proceedings before the Supervisors were invalid because one Supervisor should have recused herself for conflict of interest and refused to do so. The Supervisor in question lives, by her own admission, approximately two-and-a-half tenths of a mile from Appellant's property. N.T. from January 8, 1986 at 7, R.R. at 17a. In a request by a previous owner of the property for commercial development, this Supervisor appeared, before she was elected, to protest the development. Appellant maintains that the Supervisor should have disqualified herself from his proceeding based on opinions of this Court in which we have stated that "a municipal officer should disqualify himself from any proceeding in which he has a personal or pecuniary interest that is immediate and direct." *Borough of Youngsville v. Zoning Hearing Board of the Borough of Youngsville*, 69 Pa. Commonwealth Ct. 282, 289, 450 A.2d 1086, 1090 (1982). We conclude, however, that Appellant has not es-

tablished any *current* personal or pecuniary interest on the part of the particular supervisor in the proceedings involving *Appellant's* attempt to commercially develop the property. Further, as concluded by the trial court, the Supervisors did not make their own findings of fact but submitted the complete record to the trial court, which made independent findings of fact and conclusions of law. We are satisfied, as was the trial court, that the possible conflict of interest was irrelevant to the court's determination.

Concluding that Appellant has not met his burden of proving the Zoning Ordinance invalid as exclusionary, we affirm the trial court's order.

ORDER

The order of the Lehigh County Court of Common Pleas in the above-captioned proceeding is hereby affirmed.

Judge PALLADINO did not participate in the decision in this case.