512 A.2d 776

In Re: The Appeal of Stagebrush Promotions, Inc., from the Decision of the East Donegal Township Board of Supervisors. Mary Vivian Steiner Foundation, Inc. Stagebrush Promotions, Inc., and Mary Vivian Steiner Foundation, Inc., Appellants.

Argued February 4, 1986, before Judges ROGERS and BARRY, and Senior Judge BARBIERI, sitting as a panel of three.

*Paula B. Katchmer,* with her, *Charles B. Grove, Jr., Blakinger, Grove & Chillas, P.C.,* for appellants.

*Dennis L. Plank, Going & Plank,* for appellee, East Donegal Township Board of Supervisors.

*Charles E. Zaleski, Tive, Hetrick, & Pierce, P.C.,* for appellee, East Donegal Township Planning Commission.

OPINION BY JUDGE BARRY, July 15, 1986:

This appeal results from an order of the Lancaster County Court of Common Pleas which affirmed the decision of the East Donegal Township Board of Supervisors (Board) denying the Petition for Conditional Use filed by the appellants, Stagebrush Promotions, Inc. and Mary Vivian Steiner Foundation, Inc. (appellants).

The property involved in the present appeal is Circle Creek Farm (Circle Creek), a 98.1-acre tract of land

located in East Donegal Township. Erected on the property is a dwelling house, a pavilion, farm buildings, swimming pool, a campground, and cabins. Since 1963 these facilities have been used for various "recreational" purposes. The tract itself is located primarily in a district zoned agricultural, with another portion located in a floodplain district.

Prompted by certain intensive activities carried on at Circle Creek,[1] the Board in early 1981 notified the owners that they were, by virtue of such activities, in violation of the township zoning ordinance. In response, appellant Stagebrush Promotions, Inc.,[2] filed a Petition for Conditional Use with the Board. The petition actually enumerated a variety of uses, including the following:

A. Campgrounds;

B. Sporting Events;

C. Day camp for children and certain disadvantaged individuals;

---

[1] The record reveals that the farm had, for many years, been operated as a campground. Included in that operation was, at least during one summer, a day camp for handicapped children. A formal swim club was also maintained. Living on the property were a married couple, employees of the owners, who managed the campground. All of this was apparently carried on in passive violation of the township zoning ordinance governing uses allowed in an Agricultural District.

In the late 1970's and early 1980's, however, the owner of the farm began to approve rental of the property for, among other things, use as grounds for "Spring Flings" for local college students, rock concerts, and "Van Shows." These activities, which drew large crowds, generated considerable noises, and created other disturbing environmental conditions, finally brought the unapproved use to the attention of the township authorities.

[2] Stagebrush Promotions, Inc. (Stagebrush) is a corporation, organized by the owner's son, which leases the farm from the owner. During the hearings on the petition, Stagebrush was the party at all times seeking the conditional use.

D. Cultural Events, including but not limited to Shakespearian Summer Stock, International Dancers and Singers, and other theatrical events;

E. Musical Concerts and festivals;

F. Craft, antique and hobby shows and festivals;

G. Community festivals;

H. Circuses;

I. Other recreational uses of a similar nature not specified above.

*Averment No. 8, Petition for Conditional Use.* This petition was filed under Section 402.2(b)(4) of the township ordinance, which authorizes as a conditional use in an Agricultural District "public and private parks and recreation areas." *Id.*

After review by the East Donegal Township Planning Commission (Planning Commission), the Board, on the former's recommendation, denied the petition without any hearings having been held. Appellants then pursued a Petition for De Novo Hearing in the trial court, obtaining from that court an order that the Board grant to the appellants a "fair and impartial hearing."[3] Over the succeeding two years a series of twenty-seven hearings on the petition was held. Appellants, a "concerned citizens" group and the planning commission (which has acted in an adversary capacity throughout this litigation), all submitted testimony, in favor of and against, respectively, the proposed conditional use.

At the conclusion of the hearings the Board denied the petition, concluding that the appellants had not satisfied their burden of "show[ing] compliance with the specific terms of the [township ordinance] for the grant

---

[3] *In re: Appeal of Stagebrush Promotions, Inc., From Decision of the East Donegal Township Board of Supervisors* (Trust Book 47, Page 34, filed July 16, 1981).

of a conditional use."[4] The trial court, sitting *en banc,* affirmed, and appellants then initiated an appeal to this Court.

We are mindful that our review in the present appeal is limited to a determination of whether the Board committed either an abuse of discretion or an error of law. *Zoning Hearing Board of Mahoning Township v. Zlomsowitch,* 87 Pa. Commonwealth Ct. 123, 125, 486 A.2d 568, 569 (1984). Appellants in the present appeal argue (1) that the Board's denial of the petition was in error as a matter of law; (2) that the Board erred in not specifically considering each particular use denominated in the petition; and (3) that the Board exhibited such bias towards the appellants in the course of the proceedings that they were denied a fair and impartial hearing on the petition.

The party seeking a petition for conditional use carries the burden of demonstrating that the proposal complies with the terms of the ordinance which expressly govern such a grant. *Bray v. Zoning Board of Adjustment,* 48 Pa. Commonwealth Ct. 523, 527, 410 A.2d 909, 910 (1980). The principal ordinance involved in the present case demands that appellants demonstrate that the proposed use fall into the category of "public and private parks and recreation areas," conditional uses allowed in the Agricultural District in which Circle Creek is located. Also of significance is Section 402.1 of the same ordinance, providing the intended purpose of the Agricultural District:

(a) To identify those areas where agricultural activities should be encouraged and/or preserved.

---

[4] The Board also concluded that "assuming arrguendo [sic], the applicants . . . have presented sufficient evidence of compliance . . . [the rebuttal evidence] demonstrates the high degree of probability that the traffic increase poses a substantial threat to the health and safety of the community." *Board Decision* at 14-15.

(b) To protect and stabilize agriculture as an on-going economic activity by permitting only those land uses which are agricultural in character or which act in direct support of such activity.

*Id.* In addition, Section 507 of the ordinance provides, as criteria to be considered in the course of ruling upon conditional uses, whether the use "is appropriate to the specific location for which it is proposed, consistent with the Comprehensive Plan of East Donegal Township and in keeping with the intent of this Ordinance." It was within the context of this statutory scheme that the petition was denied. We conclude that the Board was correct in its conclusion that the appellants failed to meet the threshold burden of demonstrating compliance, and hence affirm.

### 1. *Scope of Consideration of the Petition*

Complicating the consideration of the petition, both by the Board and this Court, is the wide-ranging variety of uses included in the petition. This diversity played a role in the Board's denial of the petition, as evident in its Finding of Fact Number 42: "A number of the proposed uses are in and of themselves recreational in nature; however, the intensity of use, number and duration of the proposed activities and events are more commercial in nature than recreational." *Board Decision* at 10. Due, we believe, to this same wide-ranging character of the petition, the Board also concluded that "[t]he application, exhibits and testimony of applicants and their witnesses is insufficient and do not contain sufficient detail for the Board to determine whether there is compliance with the specific terms of the Zoning Ordinance." *Board Decision* at 16 (Conclusion of Law No. 9). This diversity thus clearly played a part in the Board's decision.

Appellants, however, argue as a preliminary matter that the board was obliged to rule on each of the individual proposed uses with respect to whether the terms of the Ordinance had been met. As to this initial proposition we must voice disagreement. Although the hearing transcript demonstrates that appellants were apparently willing to have as many conditions and restrictions placed upon the proposed uses as the Board thought proper,[5] at no time did the appellant seek to amend the petition or make a formal request that the various uses be considered and ruled upon individually. Appellants proceeded with their petition as drafted and submitted, seeking use of the involved property for a broad-ranging variety of uses, and the Board was within its discretion in treating it as submitted.

Consequently, our own review is necessarily directed to the petition as submitted.[6]

---

[5] *See, e.g.* N.T., *Hearing* of 3/25/82, at 104-05:
[Counsel for Concerned Citizens]:
I find it very difficult to keep knowing which application of the applicant we are dealing with, because [counsel for appellants] keeps insisting that now something else could be done other than the testimony of the applicant. . . . I do not believe that someone is entitled to make an application that is a fishing expedition, to see how much they can get away with. . . . I think they should do it and let us know what we are trying to oppose. [. . . .]
[Counsel for Appellants]:

. . . .

This goes back approximately fourteen months, and I sat in this room . . . and made a very specific point to say to these people[:] you tell us under what conditions you would find this acceptable and we will certainly analyze it and see if we can live with it.
*Id. See also* N.T., *Hearing* of 1/18/82 (applicant expressing willingness to locate macadam-surfaced sporting event areas to location outside flood plain).

[6] We decline in this respect to assume the position of a "super" zoning board, considering, one by one, whether the various uses proposed in the petition came within the strictures of the ordinance.

## 2. *Appellants' Compliance With the Ordinance*

Throughout the extended hearings conducted on the petition, the center of the debate was whether the petition proposed a use which was recreational in nature or was, instead, "commercial." That it was the latter was the view of experts testifying against the petition.[7] And, as manifested from the factual finding recited above, that same conclusion formed, at least in part, the Board's justification for denying the petition. As will be seen, we decline to follow the conclusion of the Board that the proposed petition, considered as a whole, proposes a commercial use, necessarily excluded, by virtue of that status, from the Agricultural District. Still, our review of the record convinces us that, based upon the Board's factual findings, the appellants' petition, considered in its submitted state, nevertheless failed to satisfy the strictures of the involved ordinance.

In so concluding we have the benefit of this Court's recent decision in *Neshannock Township v. Musguire*, 86 Pa. Commonwealth Ct. 246, 484 A.2d 839 (1984). In *Neshannock*, this Court was faced with the issue of "whether a commercial racetrack constitutes a 'recreation ground', public or private, as permitted" by the Neshannock Township zoning ordinance governing a "Residential Limited Use" district. *Id.* at 246, 484 A.2d at 839. Both landowner and the township *agreed* that the track was commerical in nature, but the former argued that, such characteristic notwithstanding, operation of a racetrack was nonetheless *also* in the nature of "recreation grounds," a specifically permitted use. Affirming the chancellor's disapproval of the use, this

---

[7] *See, e.g.,* N.T., *Hearing* of 3/24/82, at 104-106 (testimony of Witness Kime).

Court first noted the declared purpose of the district in question [8] and then held as follows:

> In the context of the ordinance, 'recreation grounds' appears to be synonymous with 'park.' With that connotation, 'recreation ground' would not seem to apply, in ordinary parlance, to a commercial vehicular racetrack, particularly in light of the declared purpose of [the residential district].

*Id.* at 250, 484 A.2d at 841. *Neshannock* thus clearly demands that, for purposes of the present controversy, a *contextual* reading of the ordinance is required. This precludes any determination, such as that made by the Board, that the proposed use is commercial, rather than recreational, simply because the property is to be frequently used and operated privately with the intent to make a profit.

That very contextual reading, however, is what convinces us that in the present case the petition has nonetheless not come within the strictures of the ordinance. Relevant in this regard are the following findings of fact of the Board:

> 19. The applicant testified that as many as thirty-nine (39) events would be held on a weekend basis on the property, and that the property would also be used throughout the week for other activities.

---

[8] 86 Pa. Commonwealth Ct. at 248, 484 A.2d at 840: (1) To preserve natural amenities; (2) to minimize erosion; (3) to protect the flood plain; (4) to preserve open space not readily adaptable to economic development; (5) to preserve surface drainage channels for unimpeded removal of storm water; and (6) to provide additional recreation space. *Id.*

20. The applicant . . . testified that as many as 10,000 people may attend various events at the property, but could not state how many people the site could accommodate.

These findings, which are supported in the record, reflect a proposed use which may well have recreational *aspects,* but which loses such a character in general when read in the context of an ordinance in which "recreational area" must be read to be coextensive with "park." *Cf. Neshannock.* It is not to be denied that, especially in recent years, open, park-like settings are increasingly popular locations for activities such as musical concerts, one of the most bitterly opposed of the uses proposed in the petition.[9] Notwithstanding this new connotation of "park," the wide ranging variety of uses asserted in the petition, some of which, as recounted above, are to draw massive crowds, comtemplates more a private, multi-purpose fairgounds or entertainment center than a park.

Our conclusion is further supported by considering, as we must, *Neshannock,* the stated purpose of the Agricultural District, *viz.,* "[t]o protect and stabilize agriculture as an ongoing economic activity by permitting only those land uses which are agricultural in character or which act in direct support of such activity."[10] Beyond keeping the land in an open state,[11] we are unable to discern how the various, concurrent activities proposed in the petition work "in direct support," or in stabilization of agricultural activities.

---

[9] In this regard the appellants submitted testimony regarding Wolftrap Farm Park in Northern Virginia; Tanglewood, a music center in Massachusetts; Blossom Music Center in central Ohio; and two parks in proximity to East Donegal Township in which such concerts are regularly held.

[10] This portion of the ordinance has been reproduced, in its entirety, at an earlier point in the text of this opinion.

[11] Such a goal is, notably, expressed for the area encompassing Circle Creek in the Township's Comprehensive Plan.

This was likewise the conclusion of the Board,[12] and as the record supports such a notion, we cannot say that error was committed in the conclusion that the appellants had not met their burden of proof.

## 3. *Impartiality of Hearings*

Appellants have set forth numerous grounds for their argument that they were denied a fair hearing, including (1) that bias is exhibited in the Planning Commission's participation as a litigant in the proceedings; (2) that one of the supervisors had voiced his opposition to the petition at the very commencement of the proceedings; (3) that bias is exhibited in the withholding from appellants of stenographic notes of an *ex parte* meeting held by the supervisors to hear community objections to the petition; and (4) that bias is exhibited by the Board's failure to fully accept the appellants' witnesses as experts. We will treat these allegations seriatim.

First, while the Municipalities Planning Code[13] does not *specifically* provide for participation of planning commissions as litigants in zoning hearings, such involvement has long been upheld by this Court. *See Application of Maida Blouch,* 26 Pa. Commonwealth Ct. 147, 150, 362 A.2d 1139, 1141 (1976). In the present case appellants have made much of the fact that the same Board which was to adjudicate the merits of the petition approved the payment of the commission's counsel, asserting that this "is indicative of the bias and prejudice of the board of Supervisors against [the] [p]etition." *Brief for Appellants* at 10. We think this assertion, advanced in conclusionary tones without further

---

[12] *Cf. Board Finding of Fact* No. 41; *Conclusion of Law* No. 3.

[13] 53 P.S. §§10101–11202. *Cf. id.* §10209.1 (enumerating powers and duties of planning agencies).

explanation, to be meritless. As the governing body of the township, the Board's approval and payment of the commission's counsel was no more than an of-course ministerial act, and clearly cannot, by itself, serve as a *per se* indication of bias.

Second, the supervisor alleged to have exhibited a preconceived bias against the petition—an allegation we think supported in the record—ultimately recused himself and did not participate in the voting on the petition. While the supervisor *did* sit through most of the hearings, our careful review of the record reveals to us no evidentiary prejudice to appellants which resulted due to that presence. Extended hearings were held at which appellants had ample occasion to present all the testimony they desired. The record of those hearings provides this Court with the opportunity to effect a full and complete appellate review of whether the Board's decision was attended by error. We thus cannot hold that the mere presence of the supervisor, who, as we have stated, ultimately recused himself, compels a conclusion that an impartial hearing had been denied to the appellants.[14]

Nor do we find merit in the notion that the Board's refusal to fully accept two of the appellants' witnesses as experts exhibits a fatal bias on the part of the Board. Even if that decision was error, the witnesses were allowed to testify freely, and the record reveals no support for appellants' conclusionary assertion that the credentials rejection was the result of bias.

---

[14] For similar reasons we cannot conclude that the Board's refusal to release the stenographic notes from the initial "citizens' " hearing reflects a bias fatal to the appellants' right to a fair hearing. The record supports the Board's position that the involved hearing was convened before the trial court's July 16, 1981 order directing that a fair and impartial hearing be held. Although the Board's refusal was never satisfactorily explained, we are satisfied that after the trial court's order the appellants received a fair hearing.

We thus affirm the trial court, noting that we do so on the basis of the petition as submitted to the Board. This opinion is not to be construed as precluding appellants from submitting a new petition including a recreational use or uses consistent with the ordinance.

Affirmed.

### ORDER

Now, July 15, 1986, the order of the Lancaster County Court of Common Pleas, Trust Book No. 47, page 34, dated April 12, 1985, is hereby affirmed.