531 A.2d 111

The Municipality of Upper St. Clair, Appellant *v.* Boyce Road Partnership, Appellee.

Argued May 21, 1987, before Judges DOYLE and PALLADINO, and Senior Judge BLATT, sitting as a panel of three.

*Joan P. Feldman,* with her, *Robert N. Hackett,* for appellant.

*Lynn E. Macbeth,* with him, *Walter A. Koegler,* for appellee.

OPINION BY JUDGE PALLADINO, September 17, 1987:
This is an appeal by the Municipality of Upper St. Clair (Appellant) from an order of the Court of Common Pleas of Allegheny County (trial court) reversing a denial by the Upper St. Clair Board of Commissioners (Board) of a conditional use permit for the construction of a planned office center (POC) to Boyce Road Partnership (Developer). For the reasons which follow, we reverse.

In 1975, Developer purchased a parcel of real property approximately forty-two (42) acres in size and located in Upper St. Clair Township. At all times relevant hereto, this parcel was zoned RM-P Planned Restricted Light Industrial District.

Pursuant to a master plan for the development of the entire tract, Developer applied for tentative approval of Phase I of the POC in 1977. A POC is permitted in an RM-P district as a conditional use.[1] Approval is obtained in two phases, tentative and final. Tentative approval often contains conditions which must be satisfied prior to the grant of final approval.

After both tentative and final approvals were secured, Developer constructed two office buildings, completing the first in 1979 and the second in 1981. On February 6, 1984, Boyce Plaza Road, abutting these office buildings, was accepted by Appellant.

---

[1] A conditional use is similar to a special exception except that it falls within the jurisdiction of the municipal legislative body rather than the zoning hearing board. R. Ryan, Pennsylvania Zoning Law and Practice §5.1.4. It is a presumptively valid use in the district so long as it meets the criteria set forth in the zoning ordinance. *Id.*

In February of 1981, Developer started the application process for Phase II. Phase II consisted of an office building and a hospital. Amended tentative approval was granted on October 4, 1982, subject to, among others, the following conditions:

11. That the following phasing schedule for filing for final approvals be followed:

Phase 2—Lot 3A—not later than 12 months from filing of Phase I (the parcel of land lying west of the Stop N Go building adjacent to Chartiers Creek) and after satisfactory completion of installation of all public and private improvements serving Boyce Road POC (that parcel of land containing the Stop N Go headquarters building) and Phase I of Boyce Plaza Complex including installation of the 8 inch water line with a crossover and direct point of connection for the Stop N Go Office Building.

Phase 3—Lot 5—not later than 12 months from the filing of the previous phase and *after satisfactory completion of the installation of all public and private improvements for prior phases.*

Phase 4—Lot 6—*same condition as for phase 3.*

(Emphasis added.) Appellant granted final approval for this phase by ordinance enacted July 5, 1983, subject to the condition "THAT Final Approval of the plan is subject to all conditions of amended Tentative Approval granted October 4, 1982 by Decision—USC-POC 1-82 of the Board of Commissioners." The office building was completed in 1983 and the hospital in 1984. On September 26, 1984, Appellant refused to accept the dedication of the additional portion of Boyce Plaza Road and the Phase II public improvements, abutting the hospital.

Appellant's stated reason for rejection was that Developer failed to install the electric lines serving the hospital underground, in violation of Section 114-16B of the Upper St. Clair subdivision ordinance. Appellant stated:

Unfortunately, the overhead installation of electric did not come to our attention until it was finished. The approved construction drawings did not indicate the proposed electric installation, and the utility company failed to apply for and obtain the required Township Street Opening Permit for the installation.

Nevertheless, unless there is some technical reason why it is impossible or unadvisable, we must insist that the Township requirements and standards be complied with and that the electric along Boyce Plaza Road be placed underground prior to Township acceptance of Boyce Plaza Road Extension or the consideration of any other application for final approval of additional phases of Boyce Plaza Complex Planned Office Center, including Phase III which you have told me you intend to file in October, 1984. This is consistent with the phasing schedule for Boyce Plaza Complex Planned Office Center.

In October, 1984, Developer filed for final approval of Phase III of the POC.[2] Phase III consists of two 15,000 sq. ft. buildings. After a February 4, 1985 hearing, the Board denied the application for final approval as incomplete. Specifically, the Board cited three items:

1) The failure to produce a financing commitment for both office buildings (Developer had

---

[2] Developer had previously obtained tentative approval for this phase.

produced a commitment from Union National Bank for one building);

2) The failure to substantiate compliance with the Upper St. Clair Interim Flood Plain Ordinance; and

3) The failure to remove the existing aerial electrical lines abutting the hospital in Phase II and place them underground.

Developer filed a notice of appeal with the trial court.

On appeal, the trial court identified the removal of the aerial electrical lines as the primary issue, quickly disposing of the other two grounds for denial of the final approval for Phase III.[3] Concluding that the Board was attempting to hold the land in question hostage, and that it was an unreasonable condition imposed too late, the trial court held that Appellant acted *unconstitutionally* in refusing to give final approval to its plan because Developer failed to replace aerial electric lines.[4] By order dated April 4, 1986, the trial court reversed the Board's decision, provided that Developer submit proof of financing within 30 days therefrom. Appellant timely appealed to this court.

---

[3] The trial court concluded that neither the floodplain ordinance nor the lack of financial commitment was a proper ground for denial of the final approval.

The trial court concluded that the Board knew that the Federal Emergency Management Agency would approve floodplain compliance, and that the approval letter was forthcoming.

Further, the trial court ordered Developer to obtain the necessary financial commitment within 30 days of its order.

[4] The trial court never explains which constitutional rights it concluded were violated by the Board. They do state that "[t]hese facts begin to approach a de facto taking of Boyce's land." *Boyce Road Partnership v. The Municipality of Upper St. Clair,*        Pa. D. & C. 3d    ,     (1985). We know of no constitutional right which is violated by facts "approaching" a de facto taking and the concept of de facto taking is *clearly not* involved in this case.

As a result of the appeal by Appellant, Pa. R.A.P. 1736 provides for an automatic supersedeas in favor of the Muncipality. Pursuant to Pa. R.A.P. 1732, Developer petitioned the trial court for relief from supersedeas, asserting that no damage to Appellant's position would occur by allowing them to develop this parcel. The trial court granted relief from supersedeas and ordered the Township to issue Developer a building permit[5] by order dated July 18, 1986. On appeal to this court, by order dated August 21, 1986, the Honorable THEODORE O. ROGERS, Senior Judge, denied Appellant's application for reinstatement of the automatic stay provided by Pa. R.A.P. 1736(b).

Our scope of review, in an appeal from the denial of a conditional use permit, where the trial court took no additional evidence, is limited to a determination of whether the Board of Commissioners committed an error of law or manifestly abused its discretion. *In Re: Appeal of Stagebrush Promotions, Inc.*, 98 Pa. Commonwealth Ct. 634, 512 A.2d 776 (1986).

CONSTRUCTION FINANCING COMMITMENT

Section 130-22(c)(1)(k) of the Upper St. Clair Zoning Code (Code) provides that an application for final approval shall include: "Evidence that a commitment from a responsible financial institution has been issued to the Applicant for construction financing." In the event that the applicant complies with all the requirements of the ordinances as well as any conditions of the tentative approval, applicant is entitled to final approval as a matter of right. Section 711(a) of Chapter A140 of the Code. If

---

[5] A building permit is issued pursuant to compliance with factors established by the municipality's ordinances. In this fact pattern, an order to compel the grant of a building permit is not within the province of a trial court.

conditions are unfulfilled or the applicant has varied the development plan given final approval, the Board may refuse to grant final approval. Section 711(b) of Chapter A140 of the Code. On this ground alone, the Board was entitled to refuse to grant final approval. The trial court erred, as a matter of law, when it completely disregarded the procedures of the zoning ordinance, reversing the Board and sustaining Developer's appeal days. This was a complete usurpation of the power of the Board by the trial court.

## FLOODPLAIN ORDINANCE

The Board listed as its second ground for denial of final approval, Developer's failure to comply with the Township's interim floodplain ordinance. Compliance with the interim floodplain ordinance, Ordinance 1074, Section 1.01, is a precondition to receiving a building permit. The zoning ordinance does not provide for a determination of compliance at the tentative or final approval stages. As such, this was not a reasonable condition to place on the developer at this stage.

## AERIAL ELECTRIC LINES

Finally, we are faced with the question of whether the Board has the power to require the removal of existing aerial electric lines and the placement thereof underground on a previously developed phase of a POC, in order to gain final approval of a subsequent phase.

Section 114-16 of the Upper St. Clair Code (Subdivision and Land Control) provides that "all electric lines and wires shall be installed underground in any subdivision which consists of five (5) or more lots." Therefore, Developer, who is deemed to have knowledge of all the

provisions of the applicable ordinances, was required to place the electric wires underground.[6]

In the tentative approval for the Boyce Road Plaza, condition 11 requires the completion of the improvements in the previous phase prior to final approval of the next phase. A governing body may impose reasonable conditions upon the grant of tentative approval, and a condition requiring the completion of improvements in accordance with the township ordinance is reasonable. Thus, the denial of final approval by the Board based on the failure to complete improvements in the manner provided by the township's ordinances is neither an abuse of discretion nor an error of law.

Since relief from supersedeas has been granted and, in all likelihood, development has begun, the practical effect of what we do is to require Developer to replace the aerial electric lines abutting the hospital on Boyce Plaza Road. Accordingly, we reverse the order of the trial court and reinstate the decision of the Board.

## ORDER

AND NOW, September 17, 1987, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is reversed and the order of the Board is reinstated.

---

[6] Developer contends that the subdivision ordinance doesn't apply to him because, he argues, this is not a subdivision of 5 or more lots. Rather, he contends, each time he applies for final approval is a subdivision of one lot. To allow the construction espoused by Developer would defeat the provisions of the ordinance. Merely by phasing your development, you could argue that each phase is a new subdivision of one lot. This exercise in semantics cannot be allowed to defeat the purpose and intent of the ordinance.